**UNITED STATES v. RENKEN, and three other cases.**

Nos. 9181–9183.

District Court, W. D. South Carolina.

May 6, 1944.

Oscar H. Doyle, U. S. Atty., of Greenville, S. C., for the United States.

Robert McC. Figg, Jr., and J. D. E. Meyer, both of Charleston, S. C., for defendant Walter A. Renken.

Irwin Geiger, of Washington, D. C., A. C. Mann, of Greenville (Meyer Turin, of Washington, D. C., of counsel), for defendants Old Monastery Co. and R. Harold Ostrow.

J. C. Long and J. D. E. Meyer, both of Charleston, S. C., and John K. Hood, Jr., of Anderson, S. C., for defendants Vincent Chicco and George P. Stauss.

C. T. Graydon, of Columbia, S. C., and A. F. Burgess and Thomas A. Wofford, both of Greenville, S. C., attorneys for the defendants Richland Wholesale Liquors, Inc., and E. M. Smith.

R. B. Hildebrand, of York, S. C., for defendant C. L. Britt.

WYCHE, District Judge.

The indictments in the above cases charge the defendants named therein with conspiring to violate the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 904(a), and the Maximum Price Regulations issued in pursuance thereof, and with violations of the Act and Maximum Price Regulations issued thereunder.

Motions to quash, and demurrers to the indictments, are made upon the following grounds:

1. The allegations of the indictments fail to allege that the defendant or defendants *wilfully* violated, or *wilfully* conspired to violate, the Maximum Price Regulations No. 193 and No. 445, promulgated under the authority of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq.

2. The allegations in the indictments fail to allege the *approval by the Secretary of Agriculture* of Maximum Price Regulations No. 193 and No. 445, promulgated under the authority of the Emergency Price Control Act of 1942.

3. The allegations in the indictments fail to allege that the alleged offenses were committed after approval of Maximum Price Regulation No. 193 and of Maximum Price Regulation No. 445, by the Secretary of Agriculture.

4. The conspiracy indictment and the conspiracy counts in the other indictments fail to allege an offense therein of a conspiracy with such certainty that the defendant in each case can avail himself of his conviction or acquittal thereon for his protection against a further prosecution for the same offense.

5. Because the Emergency Price Control Act of 1942, insofar as it may relate to intoxicating liquors, is in violation of the 21st Amendment to the Federal Constitution, and therefore null and void.

1. As to the first question, the applicable provisions of the Act, 50 U.S.C.A. Appendix, § 904, provide: "(a) It shall be unlawful, * * * for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity, * * * or otherwise to do or omit to do any act, in violation of any regulation or order under section 2 (section 902 of this Ap-

pendix), or of any price schedule effective in accordance with the provisions of section 206 (section 926 of this Appendix), or of any regulation, order, or requirement under section 202(b) or section 205 (f) (sections 922(b) or 925(f) of this Appendix), or to offer, solicit, attempt, or agree to do any of the foregoing." Section 902 of the Appendix, referred to, authorizes the Price Administrator to promulgate Maximum Price Regulations pursuant to the Emergency Price Control Act of 1942. Sections 922(b) and 925(f) have no applicability to these cases.

The enforcement provisions of the Emergency Price Control Act of 1942 appears in section 925, Title 50 of the U.S. C.A.Appendix, as follows: "(a) Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act (section 904 of this Appendix), he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, * * *. (b) Any person who willfully violates any provision of section 4 of this Act (section 904 of this Appendix), * * * shall, upon conviction thereof, be subject to a fine of not more than $5,000, or to imprisonment for not more than two years in the case of a violation of section 4(c) (section 904 of this Appendix) and for not more than one year in all other cases, or to both such fine and imprisonment. Whenever the Administrator has reason to believe that any person is liable to punishment under this subsection, he may certify the facts to the Attorney General, who may, in his discretion, cause appropriate proceedings to be brought. (c) The district courts shall have jurisdiction of criminal proceedings for violations of section 4 of this Act (section 904 of this Appendix), * * *. Such criminal proceedings may be brought in any district in which any part of any act or transaction constituting the violation occurred. * * * (d) No person shall be held liable for damages or penalties * * * (if acting in good faith) * * *. (e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or busi-

ness may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. * * *, and the buyer is not entitled to bring suit or action under this subsection, the Administrator may bring such action under this subsection on behalf of the United States. * * *"

▆ It appears from the foregoing that while it may be *unlawful* to sell or deliver any commodity in violation of any Maximum Price Regulation, and while civil proceedings for injunction or for treble damages may be brought by the Administrator, or treble damages and attorney's fees may be recovered by an aggrieved purchaser in civil proceedings, no *criminal liability* attaches unless there is a *wilful* violation of the Act or of the Maximum Price Regulations issued pursuant thereto. The penal provisions of the Act are applicable only to violations of a regulation which are wilful. Yakus v. United States, 64 S.Ct. 660, 667, 88 L.Ed. ——, ——.

▆ Where the intent is a material ingredient of the crime, it is necessary to be averred, and it may always be averred in general terms. Evans v. United States, 153 U.S. 584, 594, 14 S.Ct. 934, 38 L.Ed. 830. The general rule is that the term *wilful* cannot be omitted from the indictment when the term is part of a statutory definition. Wharton's Crim. Proc., 10th Ed., Vol. 1, §§ 285 and 318. But where the facts alleged necessarily import wilfullness, the failure to use the word *wilful* is not fatal to the indictment. Rumely v. United States, 2 Cir., 293 F. 532, certiorari denied 263 U.S. 713, 44 S.Ct. 38, 68 L. Ed. 520.

The Chicco-Stauss indictment consists of thirteen counts; the first count alleges a conspiracy to violate the Act; the second through the thirteenth counts allege the substantive offenses. Each of the substantive charges are in identical language setting forth: that the defendants on or about a certain day, at a certain place in the Western District of South Carolina, did as wholesalers of packaged distilled spirits sell and deliver to a certain individual or individuals who were retailers of packaged distilled spirits, certain distilled spirits, to wit: some brand of distilled spirits at a certain price per

**4**

case, which said price was in excess of the applicable minimum price established by Maximum Price Regulation No. 193, the said excess amounting to so many dollars, contrary to the form of the Statute, etc. It will be observed that there is nothing in these allegations that alleges a wilful violation, or anything that could be construed as a wilful violation of either the Emergency Price Control Act of 1942, or of any Maximum Price Regulations issued in pursuance thereof.

The indictments against the other defendants, as to the substantive offenses, are in the same general form and verbiage as the Chicco-Stauss substantive counts; and like the substantive counts in the Chicco-Stauss indictment, there is no allegation of wilful violation, or any allegation that could be so construed, of either the Emergency Price Control Act of 1942, or of any Maximum Price Regulations issued in pursuance thereto.

■ From the foregoing, I must conclude that the demurrers to *all of the substantive counts of the indictments* against Vincent Chicco, George P. Stauss, Walter A. Renken, E. M. Smith, C. L. Britt and Richland Wholesale Liquors, Inc., should be sustained, and the motions to quash such counts granted.

There remains the conspiracy count in the indictment against all defendants in each of the above cases (except that against Walter A. Renken, sole defendant, C/9183). Counsel in their written briefs frankly and properly admit that their motion to quash and their demurrer on this ground cannot be sustained, but counsel insist that the absence of the word *wilful* should be taken into consideration upon the decision of the fourth ground.

■ 2 and 3. It is contended by the defendants that in order for the Administrator to establish maximum prices for intoxicating liquors it was necessary for each regulation establishing such prices to be approved, prior to its issuance, by the Secretary of Agriculture in order that said regulation be valid. This is an attack upon the validity of the price regulations. This Court has no jurisdiction to determine such question. Section 204(d) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 924(d), provides that the Emergency Court of Appeals and the Supreme Court upon review shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2, 50 U.S.C.A.Appendix, § 902, of the Act. The United States District Court for the Western District of Kentucky in discussing this provision with particular reference to the question here raised said: "Undoubtedly this court has the right to construe the regulation in order to determine its scope, but after the court, in so doing, construes the regulation as applicable to sales of whiskey in bulk, it has no further jurisdiction to adjudge the regulation invalid. Section 204 of the Emergency Price Control Act creates the Emergency Court of Appeals as hereinabove referred to, and provides in Subsection (d) thereof 'Except as provided in this section, no court, Federal, State or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule * * * or set aside, in whole or in part * * * any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision.' The constitutionality of the Emergency Price Control Act of 1942 as a whole, and validity of this section conferring exclusive original jurisdiction upon the Emergency Court of Appeals, have been upheld several times by rulings of both District Courts and United States Circuit Court of Appeals.[1] * * * In accordance with the views expressed therein the court holds that Section 204 of the Act is constitutional and binding upon this court which deprives this court of jurisdiction to consider the validity of the Regu-

[1] Rottenberg v. United States, 1 Cir., 137 F.2d 850; Henderson v. Burd, 2 Cir., 133 F.2d 515, 146 A.L.R. 714; Taylor v. Brown, Em.App., 137 F.2d 654; Henderson v. Kimmel, D.C., 47 F.Supp. 635; Dieffenbaugh v. Cook, D.C., 47 F.Supp. 645; United States v. J. Slobodkin Co., D.C., 48 F.Supp. 913; United States v. C. Thomas Stores, D. C., 49 F.Supp. 111. See also United States v. Macintosh, 283 U.S. 605, 622, 51 S.Ct. 570, 75 L.Ed. 1302; Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165; Kline v. Burke Const. Co., 260 U.S. 226, 233, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Highland v. Russell Car & Snow Plow Co., 279 U.S. 253, 49 S.Ct. 314, 73 L.Ed. 688; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50, 51, 58 S.Ct. 459, 82 L.Ed. 638.

lation which the defendants are attacking herein." Brown v. Cummins Distilleries Corporation, D.C., 53 F.Supp. 659, 665. This question was settled recently by the Supreme Court in the case of Yakus v. United States, 64 S.Ct. 660, 669, 88 L. Ed. ——, ——, in which the Court states: "In Lockerty v. Phillips, supra, (319 U. S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339) we held that these provisions conferred on the Emergency Court of Appeals, subject to review by this Court, exclusive equity jurisdiction to restrain enforcement of price regulations of the Administrator and that they withdrew such jurisdiction from all other courts. This was accomplished by the exercise of the constitutional powers of Congress to prescribe the jurisdiction of inferior federal courts, and the jurisdiction of all state courts to determine federal questions, and to vest that jurisdiction in a single court, the Emergency Court of Appeals. The considerations which led us to that conclusion with respect to the equity jurisdiction of the district court, lead to the like conclusion as to its power to consider the validity of a price regulation as a defense to a criminal prosecution for its violation. The provisions of § 204(d), conferring upon the Emergency Court of Appeals and this Court 'exclusive jurisdiction to determine the validity of any regulation or order', coupled with the provision that 'no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation', are broad enough in terms to deprive the district court of power to consider the validity of the Administrator's regulation or order as a defense to a criminal prosecution for its violation."

4. It is contended that the allegations in the conspiracy count in the indictments are insufficient and duplicitous. The gist of the crime of conspiracy is the unlawful agreement. The counts charging conspiracy in these indictments charge that there was such an unlawful agreement. Its terms and objects are sufficiently described. It is a well settled principle of law that the unlawful objects of a conspiracy need not be described with the same particularity as is required in charging the commission of the substantive crime. Hill v. United States, Cir., 42 F.2d 812; Center v. United States, Cir., 96 F.2d 127. It has also been repeatedly held that there may be alleged one agreement having many unlawful objects. "The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'The conspiracy is the crime, and that is one, however diverse its objects'." Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 102, 87 L.Ed. 23. A conspiracy to commit one act made unlawful by statute would be one to commit an "offense" against the United States. Two or more unlawful acts would necessitate the use of the plural of "offense". There is no merit in this ground of the motions.

5. It is contended that, (1) the Emergency Price Control Act of 1942, construed in the light of the 21st Amendment, did not authorize the Administrator to regulate the price of liquor since such authority was not expressly granted; (2) even if the Act authorized the Administrator to regulate the price of liquor it was not intended by Congress that such authority be extended to states such as South Carolina, where such control was inconsistent with the state policy and control plan adopted under the state's right granted in the 21st Amendment; and, finally, if the Act be construed to authorize the Administrator to regulate the price of liquor, then to that extent the Act is in conflict with the spirit and letter of the 21st Amendment and is void.

The pertinent provisions of the 21st Amendment are: "Section 1. The eighteenth article of amendment to the Constitution of the United States is hereby repealed. Sec. 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

The relevant portions of the Emergency Price Control Act of 1942, are: (50 U.S.C.A.Appendix, § 901) "(a) It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; to protect persons with relatively fixed

and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living; to prevent hardships to persons engaged in business, to schools, universities, and other institutions, and to the Federal, State, and local governments, which would result from abnormal increases in prices; to assist in securing adequate production of commodities and facilities; to prevent a post emergency collapse of values; to stabilize agricultural prices in the manner provided in section 3 (section 903 of this Appendix); and to permit voluntary cooperation between the Government and producers, processors, and others to accomplish the aforesaid purposes. * * *"

(50 U.S.C.A.Appendix, § 902) "(a) Whenever in the judgment of the Price Administrator (provided for in section 201 (section·921 of this Appendix)) the price or prices of a commodity or commodities have risen or threaten to rise to an extent or in a manner inconsistent with the purposes of this Act, he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act. * * *"

The basis of price determination is national in character, and for the industry as a whole, and does not take into consideration the circumstances of any particular state or the state's regulations.

South Carolina was one of the states which rejected the 21st Amendment when it was proposed by Congress. Subsequent to its ratification, however, the General Assembly of the State enacted legislation wherein it set up its own method of regulating and controlling the handling of liquor within the State. Code of Laws of South Carolina 1942, sections 1829–1863, inclusive, and amendments thereto.

On December 20, 1940, the fair trade agreement provisions of the law were repealed, and the present regulations promulgated. S.C. Code of Laws 1942, Vol. 1, pp. 1044–1046, inclusive. The State, through the power of its regulatory body, the Tax Commission, entered the field of price control, and after a period of short-

ly over nine months, withdrew from that field.

It is the contention of the defendants that the conspiracy count of the indictment, as well as the overt acts sustaining the conspiracy count, and the other individual acts comprising the remaining counts of the indictment, all allege that the alleged violation of selling the liquor in excess of the maximum price permitted by Price Regulation 193 occurred within the territorial boundaries of the State of South Carolina; that South Carolina is a State that has elected to legalize the sale of intoxicating liquors and has enacted its own laws in reference thereto and has by its laws imposed upon the South Carolina Tax Commission full and complete power and authority to regulate in any manner the Commission sees fit, the transportation, importation and use, which includes sale of intoxicating liquor within the State; that any attempt on the part of the Administrator of the Office of Price Administration to regulate in any manner the sale of intoxicating liquor within the territorial boundaries of the State of South Carolina is null and void as being in violation of the 21st Amendment to the Constitution of the United States, which Amendment gave to the respective states the exclusive right to deal with every phase of the handling of intoxicating liquors within their territorial boundaries, and that the history of the enactment of such Amendment discloses that such was the intent of Congress;[2] and that the difference between liquor and other commodities is that liquor is the only commodity dealt with by a provision of the Constitution, which was based upon a long and checkered legislative and judicial history evidencing the difficulties attendant upon its control and its manifest evils.

Under the 21st Amendment it is entirely up to the state whether liquor can be imported into, or delivered or used within its borders. Since it can prohibit, it may permit under such terms as it sees fit, untrammeled by the due process clause, Ziffrin, Inc., v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128; the equal protection clause, Mahoney v. Joseph Triner Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424; State Board v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.

[2] Congressional Record, Vol. 76, Part 4, page 4225; Congressional Record, Vol. 76, Part 2, page 1621.

Ed. 38; or the commerce clause of the Constitution, Ziffrin, Inc., v. Reeves, supra. The war power of the United States, like its other powers and like the police power of the States, is subject to applicable constitutional limitations. The United States lacks the police power, this was reserved to the states by the Tenth Amendment. Hamilton v. Kentucky Distilleries Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194.

Mr. Justice Jackson in his concurring opinion in Duckworth v. Arkansas, 314 U.S. 390, 62 S.Ct. 311, 315, 86 L.Ed. 294, 138 A.L.R. 1144, said: "If we yield to an urge to go beyond this rather narrow but adequate ground of decision, we should then consider whether this liquor controversy cannot properly be determined by guidance from the liquor clauses of the Constitution. These clauses of the Twenty-first Amendment create an important distinction between state power over the liquor traffic and state power over commerce in general. The people of the United States knew that liquor is a lawlessness unto itself. They determined that it should be governed by a specific and particular constitutional provision. They did not leave it to the courts to devise special distortions of the general rules as to interstate commerce to curb liquor's 'tendency to get out of legal bounds.' It was their unsatisfactory experience with that method that resulted in giving liquor an exclusive place in constitutional law as a commodity whose transportation is governed by a special constitutional provision. Transportation itself presented no special dangers or hazards, but it might be a step in evading and undermining a policy as to use and sale of liquor which the state has a right to prescribe for itself. Regulated transportation of liquor is a necessary incident of regulated consumption and distribution. So the Twenty-first Amendment made the laws as to delivery and use in the state of destination the test of legality of interstate movement. This obviously gives to state law a much greater control over interstate liquor traffic than over commerce in any other commodity. If the Twenty-first Amendment is not to be resorted to for the decision of liquor cases, it is on the way to becoming another 'almost forgotten' clause of the Constitution. Compare Edwards v. California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. [119], decided November 24, 1941.

It certainly applies to nothing else. We should decide whether this Arkansas statute is sustainable under the Twenty-first Amendment. Does it authorize a state to exact some assurance that all liquor entering its territory either is imported for lawful delivery under its own laws or will pass through without diversion? The Amendment might bear a construction that would allow a state to prohibit liquor from entering its borders at all unless by responsible carrier under consignment to some lawful destination within or beyond the state. I should not at all object to considering all of the potential evils which the Court's opinion associates with the liquor traffic, and some more that I could supply, to be sufficient reasons for giving a liberal interpretation to the Twenty-first Amendment as to state power over liquor. But the Court brushes aside the liquor provisions of the Twenty-first Amendment."

Mr. Justice Frankfurter, in a concurring opinion in the case of Carter et al. v. Commonwealth of Virginia, 321 U.S. 131, 64 S.Ct. 464, 471, said: "Fuller consideration has therefore convinced me that the power exercised by the State in Duckworth v. Arkansas, 314 U.S. 390, 62 S.Ct. 311, 86 L.Ed. 294, 138 A.L.R. 1144, as well as in this case must rest on the authority given to the States by the Twenty-first Amendment. And since Virginia derives the power to legislate as she did from the Twenty-first Amendment, the Commerce Clause does not come into play. So this Court has twice ruled. 'Since the Twenty-first Amendment, * * * as held in the Young case (299 U.S. 59, 57 S.Ct. 77, 81 L. Ed. 38) the right of a state to prohibit or regulate the importation of intoxicating liquor is not limited by the commerce clause.' Indianapolis Brewing Co. v. Liquor Comm'n, 305 U.S. 391, 394, 59 S.Ct. 254, 255, 83 L.Ed. 243; see, also Finch & Co. v. McKittrick, 305 U.S. 395, 398, 59 S.Ct. 256, 257, 83 L.Ed. 246."

Mr. Justice Black in his concurring opinion in the same case said: "The Twenty-first Amendment has placed liquor in a category different from that of other articles of commerce. Though the precise amount of power it has left in Congress to regulate liquor under the Commerce Clause has not been marked out by decisions, this much is settled: local, not national, regulation of the liquor traffic is now the general Constitutional policy."

Based upon the foregoing decisions of the Supreme Court, and others of like import, counsel for the defendants have presented able and forceful arguments to sustain their conclusion that since South Carolina, under the broad power conferred upon it by the 21st Amendment, has enacted a plan of liquor control, comprehensive and detailed, as a basis upon which it permits the liquor traffic to exist within its borders, and not only does not make price control a part of its plan, but has actually tried the efficacy of price control thereof, and after experience therewith, has abandoned it, and has determined that price control is not desirable, and that its best interests in dealing with the liquor traffic require that its chosen plan of control be not burdened with, or defeated by, the attendant evils of price control, Congress is forbidden by the 21st Amendment to enact any law contrary to such plan and that the Emergency Price Control Act of 1942, and the price regulations concerning intoxicating liquors passed in pursuance thereof, are contrary to the plan adopted by the State, and, therefore, null and void.

But the difficulty is, I am bound by the latest decision of the Supreme Court in my consideration of the question here involved, and that decision is Yakus v. United States, 64 S.Ct. 660, 667, 88 L.Ed. ——, wherein the Supreme Court held that the Emergency Price Control Act of 1942 was "an exercise by Congress of its legislative power." The Emergency Price Control Act of 1942, itself, however, does not regulate the price of intoxicating liquor, or any other commodity. The price control is imposed by the implementing regulations. It follows, therefore, that this ground of defendant's motion attacks the validity of the regulations. In the Yakus case, as hereinbefore observed, it was definitely decided that the regulation there involved could not be attacked in the District Court, even in a criminal case; that the question, if raised at all, had to be raised in the Emergency Court of Appeals, set up under the Act. However, the Court in its majority opinion, said: "We have no occasion to decide whether one charged with criminal violation of a duly promulgated price regulation may defend on the ground that the regulation is unconstitutional on its face." But, as was said by Mr. Justice Rutledge, in his dissenting opinion in this case, *"The prohibition is unqualified. It makes no distinction between regulations invalid on constitutional grounds and others merely departing in some respect from statutory limitations,* which Congress might waive, *or by the criterion whether invalidity appears on the face of the regulation or only* by proof of facts."* (Emphasis added.) The effect of the decision of the majority of the Court in the Yakus case, therefore, in my opinion, is that a District Court has no jurisdiction to determine the validity of a price regulation prescribed by the Administrator, even if it should appear that such regulation is unconstitutional on its face. I do not see how any other conclusion could be reached under the principles announced therein, for speaking for the Court, the Chief Justice says: "The provisions of § 204(d), conferring upon the Emergency Court of Appeals and this Court 'exclusive jurisdiction to determine the validity of any regulation or order', *coupled* with the provision that 'no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the *validity* of any such regulation', *are broad enough in terms to deprive the district court of power to consider the validity of the Administrator's regulation or order as a defense to a criminal prosecution for its violation.* * * * Congress, in thus authorizing consideration by the district court of the validity of the Act alone, gave clear indication that the validity of the Administrator's regulations or orders *should not be subject to attack in criminal prosecutions for their violation,* at least before their invalidity had been adjudicated by recourse to the protest procedure prescribed by the statute. Such we conclude is the correct construction of the Act. * * * Such a procedure, so long as it affords to those affected a reasonable opportunity to be heard and present evidence, does not offend against due process. * * * But upon a full examination of the provisions of the statute it is evident that the authorized procedure is not incapable of *affording the protection to petitioners' rights required by due process.* * * * The Emergency Court has power to review *all* questions of law. * * * As we have seen *Congress,* through its power to define the jurisdiction of inferior federal courts and to create such courts for the exercise of the judicial power, *could, subject to other constitutional limitations,* create the

Emergency Court of Appeals, give to it *exclusive equity jurisdiction* to determine the validity of price regulations prescribed by the Administrator, and foreclose any *further* or *other* consideration of the validity of a regulation as a *defense to a prosecution for its violation.* Unlike most penal statutes and regulations whose validity can be determined only by running the risk of violation, see Douglas v. City of Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 882, 87 L.Ed. 1324, the present statute provides a mode of testing the validity of a regulation by an independent administrative proceeding. *There is no constitutional requirement that that test be made in one tribunal rather than in another, so long as there is an opportunity to be heard and for judicial review which satisfies the demands of due process, as is the case here.* This was recognized in Bradley v. City of Richmond, supra, [227 U.S. 477, 33 S.Ct. 318, 57 L.Ed. 603], and in Wadley Southern R. Co. v. Georgia, supra, 235 U.S. [651], at pages 667, 669, 35 S.Ct. [214], at pages 220, 221, 59 L.Ed. 405, and has never been doubted by this Court. And we are pointed to no principle of law or *provision of the Constitution* which *precludes* Congress from making criminal the violation of an administrative regulation, by one who has failed to avail himself of an adequate separate procedure for the adjudication of its validity, or which precludes the practice in many ways desirable, of splitting the trial for violations of an administrative regulation by committing the determination of the issue of its validity to the agency which created it, and the issue of violation to a court which is given jurisdiction to punish violations. Such a requirement presents no novel constitutional issue. No procedural principle is more familiar to this Court than *that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.*" (Emphasis added.)

For the foregoing reasons, I must conclude that this Court has no jurisdiction to determine the validity of the regulations involved in this controversy upon the ground that such regulations are unconstitutional, or upon any 'other grounds. Therefore, the motions to quash on this ground are denied, and the demurrers on this ground are overruled.[3] Other grounds of the motions, in my opinion, are without merit, and will be overruled.

Counsel may present an appropriate order in accordance with the conclusions herein reached.

---

[3] Cf. cases cited under footnote 1 in this opinion.