### UNITED STATES v. CHICCO et al.

Cr. No. 9227.

District Court, W. D. South Carolina, Greenville Division.

Aug. 31, 1944.

212

Oscar H. Doyle, U. S. Atty., of Greenville, S. C., for the Government.

J. C. Long, of Charleston, S. C., and John K. Hood, Jr., of Anderson, S. C., for Vincent P. Chicco.

J. D. E. Meyer and Robt. McC. Figg, both of Charleston, S. C., for George P. Stauss.

TIMMERMAN, District Judge.

The defendants above named were indicted, at the May, 1944, term of this court sitting in Greenwood, South Carolina, in the first count, for a conspiracy to commit an "offense against the United States of America by wilfully violating Section 4(a) of the Emergency Price Control Act of 1942," 50 U.S.C.A.Appendix § 904(a), in the particulars therein set forth. Four (4) overt acts are alleged to have been done in furtherance of and to effect the objects of the conspiracy. The indictment also contains eleven (11) other counts, numbered two to twelve, inclusive, all of which charge substantive offenses in violation of Maximum Price Regulation No. 193, issued in pursuance of the Emergency Price Control Act of 1942, the specific violations being alleged sales of domestic distilled spirits at prices in excess of the maximum permitted by said Regulation. The indictment fixes the venue in the Anderson Division of this court, but by consent of all parties the case has been transferred to the Greenville Division for trial.

Motions to quash the indictment and a demurrer thereto, filed separately by the defendants, were heard together May 19, 1944. After the hearing on said date the Court orally announced that the motions to quash were refused and that the demurrer was overruled, and at the same time gave notice that an opinion would be filed, stating the reasons for the action then taken. The opinion has not been filed before now because of official duties elsewhere.

### Opinion

The defendant Chicco's "Motion to Quash on Constitutional Grounds" consists of seven stated grounds on three full pages of typewriting. The defendant Stauss' "Demurrer and Motion to Quash" is based on nine stated grounds which are expressed on twelve typewritten pages. Of the nine grounds stated four of them are repetitions. By this it is meant that the first eight are in pairs; first, a ground to sustain the motion to quash is stated and then immediately that ground is repeated in support of the demurrer. The ninth ground in terms applies both to the motion to quash and the demurrer. The motions are quite prolix, but they are summarized by counsel for the defendants in their briefs.

Counsel for the defendant Chicco summarized the grounds stated in his motion as follows:

"Does the 21st Amendment to the Constitution prohibit Congress from passing any law, and particularly Section 902(a) of the Emergency Price Control Act of 1942, which regulates or interferes in any manner with the sale or delivery within a socalled wet state, of intoxicating liquor legally within the territorial boundaries of the state?

"Has this court jurisdiction to hear and determine the Motion to Quash the Indictment in view of the fact that the Emergency Price Control Act of 1942 in Section 924, Title 50, U.S.C.A.Appendix, created an Emergency Court of Appeals with exclusive jurisdiction to originally determine certain phases of the validity of the regulations made by the Price Administrator under the provisions of the Emergency Price Control Act?

"Does the Emergency Price Control Act of 1942, being a so-called War Power Measure, justify Congress in violating the terms of the 21st Amendment and extending the applicability of the act to intoxicating liquor legally within a state?"

Counsel for the defendant Stauss expressed their contentions in these words:

"The grounds of the demurrer and motion to quash challenge the constitutionality, under the Twenty-first Amendment to the Constitution of the United States, of Section 2 of the Act, insofar as authority is given by Congress to the Administrator to deal with and control the price of intoxicating liquor, particularly within the State of South Carolina. They also challenge the constitutionality of the regulations of the Administrator, insofar as they undertake to control the price of the sale of such liquor, particularly in the State of South Carolina."

From the foregoing it may be deduced that the grounds of attack on the indictment, whether by way of demurrer or by motion to quash, are as follows:

1st: That the Emergency Price Control Act of 1942 violates the 21st Amendment to the Constitution and is therefore void insofar as it attempts or was intended to regulate the price of distilled spirits lawfully within a state.

2nd: That Maximum Price Regulation No. 193, issued under and pursuant to said Act, violates the 21st Amendment to the Constitution and is therefore void insofar as it attempts or is intended to regulate the price of distilled spirits lawfully within a state.

3rd: That the Act does not deny jurisdiction to the District Court, and does not fix exclusive original jurisdiction in the Emergency Court of Appeals, created by the Act, to hear and determine attacks on the constitutionality of the Act or of any Regulation issued thereunder.

Because of the history of this litigation, adverted to hereinbelow, the contentions stated will be considered in the inverse order of their statement. These same defendants were charged in this court in a previous indictment with offenses which were the same as or similar to the ones set forth in the present indictment. In that case the Act and Regulation here brought in question were attacked on the same, or substantially the same, grounds that are now advanced against them. See record in Criminal No. 9182. The attack on the previous indictment was made by motions to quash and demurrers, as may be seen by reference to the cited record. Judge Wyche heard those motions and demurrers; and, in an able opinion filed in said cause (United States v. Renken and Three Other Cases, one of which was against the defendants herein, D.C., 55 F. Supp. 1), he stated some of the issues involved in this language:

"It is contended that, (1) the Emergency Price Control Act of 1942, construed in the light of the 21st Amendment, did not authorize the Administrator to regulate the price of liquor since such authority was not expressly granted; (2) even if the Act authorized the Administrator to regulate the price of liquor it was not intended by Congress that such authority be extended to states such as South Carolina, where such control was inconsistent with the state policy and control plan adopted under the state's right granted in the 21st Amendment; and, finally, if the Act be construed to authorize the Administrator to regulate the price of liquor, then to that extent the Act is in conflict with the spirit and letter of the 21st Amendment and is void." (55 F.Supp. 1 at page 5)

After discussing the contentions stated, Judge Wyche, in his opinion, announced as one of his conclusions the following:

"For the foregoing reasons, I must conclude that *this Court has no jurisdiction to determine the validity of the regulations involved in this controversy* upon the ground that such regulations are unconstitutional, or upon any other grounds. Therefore, the motions to quash on this ground are denied, and the demurrers on this ground are overruled." (Emphasis added)

As a prelude to the quoted conclusion, Judge Wyche cited and considered relevant provisions of the Emergency Price Control Act of 1942 and the cases of Duck-

worth v. Arkansas, 314 U.S. 390, 62 S.Ct. 311, 86 L.Ed. 294, 138 A.L.R. 1144, Carter v. Virginia, 321 U.S. 131, 64 S.Ct. 464, 88 L.Ed. 605 and Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. Commenting on these he said:

"* * * The Emergency Price Control Act of 1942, itself, however, does not regulate the price of intoxicating liquor, or any other commodity. The price control is imposed by the implementing regulations. It follows, therefore, that *this ground of defendant's motion attacks the validity of the regulations.* In the Yakus Case, as hereinbefore observed, it was definitely decided that *the regulation* there involved *could not be attacked in the District Court,* even in a criminal case; that the question, if raised at all, had to be raised in the Emergency Court of Appeals, set up under the Act. However, the Court in its majority opinion, said: 'We have no occasion to decide whether one charged with criminal violation of a duly promulgated price regulation may defend on the ground that the regulation is unconstitutional on its face.' But, as was said by Mr. Justice Rutledge, in his dissenting opinion in this case, '*The prohibition is unqualified. It makes no distinction between regulations invalid on constitutional grounds and others merely departing in some respect from statutory limitations,* which Congress might waive, *or by the criterion whether invalidity appears on the face of the regulation or only* by proof of facts.' (Emphasis added.) The effect of the decision of the majority of the Court in the Yakus case, therefore, in my opinion, is that *a District Court has no jurisdiction to determine the validity of a price regulation* prescribed by the Administrator, even if it should appear that such regulation is unconstitutional on its face. I do not see how any other conclusion could be reached under the principles announced therein, * * *." (Emphasis added.)

■ From what has been said the question naturally arises as to whether the decision and judgment in the Renken Case is binding in this case. I think it is, for the parties are the same and the issue is the same. In the Renken Case the defendants not only attacked the validity of the Regulation but also the constitutionality of the Act as being "in conflict with the spirit and letter of the 21st Amendment." · And as noted above, Judge Wyche held that "the Emergency Price Control Act of 1942 * * * does not regulate the price of intoxicating liquor, or any other commodity. The price control is imposed by the implementing regulations"; and, further, "that a District Court has no jurisdiction to determine the validity of a price regulation prescribed by the Administrator, even if it should appear that such regulation is unconstitutional on its face."

The conclusions reached by Judge Wyche are not mitigated because it is said in the Yakus Case, "We have no occasion to decide whether one charged with criminal violation of a duly promulgated price regulation may defend on the ground that the regulation is unconstitutional on its face" (321 U.S. 414, 64 S.Ct. 678, 88 L.Ed. 860), for did not the Court also say in said case that "The provisions of § 204(d), conferring upon the Emergency Court of Appeals and this Court 'exclusive jurisdiction to determine the validity of any regulation or order', coupled with the provision that 'no court * * * shall have jurisdiction or power to consider the validity of any such regulation', are broad enough in terms to deprive the district court of power to consider the validity of the Administrator's regulation or order as a defense in a criminal prosecution for its violation" (321 U.S. 414, 64 S.Ct. 670, 88 L.Ed. p. 851); that "* * * Congress, through its power to define the jurisdiction of inferior federal courts and to create such courts for the exercise of the judicial power, could, subject to other constitutional limitations, create the Emergency Court of Appeals, give to it exclusive equity jurisdiction to determine the validity of price regulations prescribed by the Administrator, and foreclose any further or other consideration of the validity of a regulation as a defense to a prosecution for its violation" (321 U.S. 414, 64 S.Ct. 676, 88 L.Ed. 858); and that "No procedural principle is more familiar * * * than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it" (321 U.S. 414, 64 S.Ct. 677, 88 L.Ed. 859).

Regardless of whether the exact phase of the point now under consideration was before the Supreme Court in the Yakus Case, if the reasoning therein employed and rules of construction therein stated are basic and correctly reflect the views of the majority of the court, as apparently they

do, it follows as an inevitable conclusion that rules or orders promulgated by the Administrator, pursuant to the provisions of the Act, are not subject to attack in the district courts of the United States, whether the case used as the occasion for the attack be civil or criminal.

The defendants' second and third grounds, as hereinbefore summarized, whether advanced in support of the motions to quash or the demurrer, are overruled and held insufficient in law.

▆ This brings me to the consideration of the remaining issue made by the motions to quash and the demurrer. It concerns the constitutionality of the Act. As stated hereinabove, the defendants contend that the Act as construed by the Administrator runs counter to Section 2 of the 21st Amendment to the Constitution, which reads as follows:

"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

If the 21st Amendment had accomplished nothing more than the repeal of the 18th Amendment, the Constitution would have stood just as if the 18th Amendment had never been adopted as a part of the Constitution. In that situation there could have been no valid contention that the War Powers of Congress had been abridged or that its right to regulate Interstate Commerce had been curtailed by the repeal of the 18th Amendment.

By its terms Section 2 of the 21st Amendment is prohibitory; and What does it prohibit? Certainly nothing more than the "transportation or importation" "of intoxicating liquors" "into any State" "for delivery or use therein" "in violation of the laws thereof." There is nothing in the Act which undertakes to permit or authorize the transportation or importation of intoxicating liquors into South Carolina, or into any other state for that matter for delivery or use therein, in violation of the laws thereof. No law of the State has been cited which the Regulation or the Act violates, nor has it been shown that the Act standing alone, or as interpreted by the Administrator, in any way interferes with the administration or enforcement of any law of the State of South Carolina regulating intoxicating liquors. Furthermore there is nothing in the record to show that the Act destroys or in any wise interferes with or

obstructs any legal right of either of the defendants arising under or protected by the laws of the State or Nation. The defendants have no vested right to engage in a "racket" which operates to give them unconscionable profits because of the necessities of other citizens or needs of the nation in its battle for existence; and to say that laws of South Carolina respecting alcoholic liquors are, or were intended to be, a shield for greedy profiteering would be to malign the State and its law makers. I decline to place such a construction on the State's laws.

Section 1(a) of the Act, as amended, 50 U.S.C.A.Appendix § 901(a), declares the purposes to be attained by the enforcement of the Act in part as follows:

"It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; * * *."

Section 2(a) of said Act, 50 U.S.C.A. Appendix § 902(a), authorizes the issuance of regulations and orders by the Administrator to effect the purposes of the Act, in this language:

"Whenever in the judgment of the Price Administrator (provided for in section 201) the price or prices of a commodity or commodities have risen or threaten to rise to an extent or in a manner inconsistent with the purposes of this Act, he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act. * * *"

Section 201 of the Act, 50 U.S.C.A.Appendix § 921, referred to in Section 2(a), above quoted, creates the Office of Price Administration, provides for the appointment of an Administrator and authorizes the President to transfer all powers and functions created by the Act to the Office of Price Administration, etc.

It is contended by the defendants that it was intended by Congress, as the Administrator construes the Act, to include intoxicating liquors within the term "com-

modity or commodities" appearing in Section 2(a) of the Act, and that Congress intended to include "intoxicating liquors in the grant of authority to the Administrator to control prices on a national and uniform basis." Let it be assumed that Congress intended to control the prices of intoxicating liquors, as well as other non-enumerated commodities, and it does not follow that the Act is unconstitutional.

Counsel for the defendants point out that Section 1845 of the South Carolina Code makes it "unlawful for any person, firm or corporation to manufacture, store, keep, receive, have in possession, transport, ship, buy, sell, barter, or exchange, any alcoholic liquors except according to the provisions of such legislation"; and that "traffic in liquors is confined to manufacturers,· wholesalers and retailers", each of whom are "required to obtain licenses and to pay substantial license taxes." (Quotations from Brief.)

They further point out that Section 1842 of said Code provides for the administration and enforcement of the liquor laws of the State by the State Tax Commission and for that purpose the Tax Commission is authorized to adopt and promulgate, repeal and amend rules and regulations, not inconsistent with the laws of the State or the United States, "as it may deem necessary or proper for the control of fair trade practices, the stabilization of prices, credit sales and all other matters related to the conduct of the business" of handling or dealing in alcoholic liquors. (Quotation from Brief.) They also point to the fact that the Tax Commission, on March 13, 1940, promulgated certain regulations dealing with fair trade practices and price control of alcoholic liquors, and repealed the same on December 20, 1940. As claimed by them the only State regulations now in force read as follows:

"Regulation 6. No wholesaler may give a retail dealer any free goods, samples, rebates, gratuities, or other thing of value, as a trade inducement, or for any reason." S.C.Code, Vol. I, p. 1044.

"Regulation 12. The granting of credit by a retail dealer is strictly forbidden as is the giving of any free goods, samples, rebates, gratuities, or other thing of value, as a trade inducement or for any reason whatsoever." S.C.Code, Vol. I, p. 1044.

The defendants say that the State's attempted regulation of the liquor traffic, especially its attempt to control the prices of the various brands thereof, was a failure and resulted in the illegal possession and sale of intoxicating liquors within the State, and that federal control of liquor prices is having a similar effect, making it quite impossible for licensed dealers to compete with unlicensed dealers who are illegally handling and selling alcoholic liquors within the State. It is common knowledge, they say, that the prices of liquor, under price control, have reached unconscionable proportions in this State, averaging from "$125.00 to $150.00 a case." This state of affairs is bad, if true, but it does not argue the unconstitutionality of the Act.

■ Further the defendants contend that the abandonment of price control by the State Tax Commission, as stated above, is equivalent to declaring a state policy that there shall be no control of liquor prices within this State; that since the State may prohibit the manufacture, importation or use of alcoholic liquors within its territorial limits it may also permit its manufacture, importation, sale and use upon such terms as it sees fit, untrammeled by the due process, the equal protection, or the commerce clauses of the federal Constitution.

There is no merit in the contention that the State is committed to a policy of non-interference in such matters, simply because the state agency, to whom the State committed the duty of prescribing prices at which alcoholic liquors might be legally sold, made rules respecting said subject and then abandoned them. The State Commission did not have authority to commit the State to a policy of action; that power rests with the General Assembly of the State. The fact that the General Assembly authorized the fixing of maximum prices for alcoholic liquor evidences recognition of the evils attendant upon uncontrolled liquor prices, especially during a state of emergency, and a desire that the evil be controlled. If it should be conceded that the State has the unlimited power to fix maximum and minimum prices for intoxicating liquors sold in this State, if it elects to use such power, that does not mean that the federal government, under its War Powers, may not establish maximum prices for intoxicating liquors in the absence of state action, or in the case of state action, if the two sets of regulations do not conflict.

To be sure the federal government cannot legalize the "transportation or importa

tion" of "intoxicating liquors" "into any state" "for use or delivery therein" "in violation of the laws" of that state, and justify such action under the commerce clause of the federal Constitution, art. 1, § 8, cl. 3, but that is a "far cry" from what has been done. The Emergency Price Control Act does not, nor does it attempt to regulate the transportation or importation of alcoholic liquors into a state to be used in violation of state law. All that it does is to say that profiteers shall not embarrass the prosecution of the war by gaining control of and charging exorbitant prices for alcoholic liquors. The purpose of the Act is to frustrate the wicked plans of the few to make gain out of the needs and travail of the many, a legitimate exercise of the war powers in furtherance of the common goods and in aid of the declared legislative policy of the State that unconscionable profits should not be made out of the traffic in whiskey.

 There is no contention that the State has prescribed prices below which intoxicating liquor may not be lawfully sold and that the Administrator by regulation has reduced those prices, nor has it been shown that the Regulation interferes with the State's enforcement program respecting the manufacture, sale, use or handling of alcoholic liquors. I am of the opinion that Congress has all of the power and control of alcoholic liquors that it had before the adoption of the 18th Amendment, except that it has no power to transport or import intoxicating liquors into a state for delivery or use therein in violation of the laws thereof or to authorize others to do so. But for that qualification the power of Congress respecting alcoholic liquors is the same it was before the adoption of the 18th Amendment. As held in Hamilton v. Kentucky, etc., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194, the prohibition of traffic in alcoholic liquors as a war measure is within the War Powers of Congress. If the sale of alcoholic liquors can be prohibited entirely as a war measure, then what good reason exists to say that a reasonable price therefor may not be prescribed as a condition to traffic therein? There is no good reason for such a position, since the greater includes the lesser power.

Beyond question, Congress, in the exercise of its War Powers, can regulate prices during a national emergency created by a state of war; and there is no necessary conflict between the War Powers pro-

vision of the Constitution and Section 2 of the 21st Amendment, except perhaps in the particular above stated. If it be admitted arguendo that an irreconcilable conflict could arise, a situation which does not now exist, then the necessities of the situation would require that the War Powers clause take precedence during the existence of the national emergency. The War Powers of Congress are exerted to save the nation from possible destruction and that is the highest duty of the Government, because if the nation falls the Constitution will fall with it; and, in such a situation, those claiming the protection of the Constitution would find scant, if any, security therein.

The motions to quash and the demurrer are overruled and held insufficient in law. Let judgment be entered in accordance herewith.