## OLD MONASTERY CO. v. UNITED STATES.

### No. 5322.

Circuit Court of Appeals, Fourth Circuit.

Feb. 13, 1945.

Irwin Geiger, of Washington, D. C., for appellant.

O. H. Doyle, U. S. Atty., of Greenville, S. C. (Marion Moise, Enforcement Atty., OPA, and Sp. Asst. to the U. S. Atty., of Columbia, S. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

The Old Monastery Company, a corporation (hereinafter called Monastery), Harold Ostrow, Walter Renken and Joseph Davis were indicted by a grand jury of the United States District Court for the Western District of South Carolina for a conspiracy to violate Section 4(a) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 904(a), and Maximum

Price Regulations Numbers 193 and 445. Ostrow and Davis entered each a plea of nolo contendere, the charge was dismissed as to Renken. The case proceeded to trial with a jury against Monastery alone, the jury brought in a verdict of guilty, and Monastery was duly sentenced by the District Court. Monastery has appealed.

■■ Monastery's first point is that the indictment is defective because "it wholly omits to plead any facts showing the plan and scheme by which the alleged conspiracy was to be consummated." This point, we think, is entirely lacking in merit.

True it is that a sale, unlike many acts such as smuggling and counterfeiting, is not in itself illegal. But the indictment does not stop in alleging a mere conspiracy to effectuate a sale; it goes further in alleging a conspiracy of a number of people "that they would in the course of trade or business buy, sell and deliver packaged distilled spirits at prices in excess of the maximum price established by said Maximum Price Regulations." The indictment also sets out in detail various overt acts, with place and date, committed within the Western District of South Carolina by parties to the conspiracy. There can be no real doubt that Monastery was fully and fairly apprised by the indictment of the specific charge against it. It is well settled, too, that in conspiracy cases the details need not be described with the same particularity as is required in charging the commission of a substantive offense. Hill v. United States, 4 Cir., 42 F.2d 812; Center v. United States, 4 Cir., 96 F.2d 127; United States v. Renken, D.C., 55 F.Supp. 1, 5.

■ Monastery next complains of the refusal of the District Court, on the score of lack of jurisdiction, to pass upon the question of the invalidity of the Regulation involved. We think this ruling was correct.

In United States v. Chicco and Stauss, (decided August 31, 1944), 59 F.Supp. 211, District Judge Timmerman said: "Regardless of whether the exact phase of the point now under consideration was before the Supreme Court in the Yakus case, if the reasoning therein employed and rules of construction therein stated are basic and correctly reflect the views of the majority of the court, as apparently they do, it follows as an inevitable conclusion that rules or orders promulgated by the Administrator, pursuant to the provisions of the Act, are not subject to attack in the district courts of the United States, whether the case used as the occasion for the attack be civil or criminal."

See Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660. And our accused here, under such a ruling, is not without remedy. An amendment to the Emergency Price Control Act, found in Section 107 of the Stabilization Act of 1944, 50 U.S.C. A.Appendix § 924(e), provides: "Within thirty days after arraignment, or such additional time as the court may allow for good cause shown, in any criminal proceeding, and within five days after judgment in any civil or criminal proceeding, brought pursuant to section 205 involving alleged violation of any provision of⁵ any regulation or order issued under section 2 [or of 206], the defendant may apply to the court in which the proceeding is pending for leave to file in the Emergency Court of Appeals a complaint against the Administrator setting forth objections to the validity of any provision which the defendant is alleged to have violated. The court in which the proceeding is pending shall grant such leave with respect to any objection which it finds is made in good faith and with respect to which it finds there is reasonable and substantial excuse for the defendant's failure to present such objection in a protest filed in accordance with section 203(a). Upon the filing of a complaint pursuant to and within thirty days from the granting of such leave, the Emergency Court of Appeals shall have jurisdiction to enjoin or set aside in whole or in part * * * or to dismiss the complaint. The court may authorize the introduction of evidence, either to the Administrator or directly to the court, in accordance with subsection (a) of this section. The provisions of subsections (b), (c), and (d) of this section shall be applicable with respect to any proceeding instituted in accordance with this subsection."

■ We cannot agree with Monastery's broad contention that the repeal of the Eighteenth Amendment to the Constitution of the United States utterly deprived the Congress of power to legislate in the field of intoxicating liquors. In Washington Brewers Institute v. United States, 9 Cir., 137 F.2d 964, 967, Circuit Judge Healy aptly said: "But we think the Amendment does not deprive the national government of all authority to legislate in respect of

interstate commerce in intoxicants. There is nothing in the verbiage of the provision and little in its legislative history to support so broad a view. That Congress construed the Amendment more narrowly is evidenced by its prompt passage of the Federal Alcohol Administration Act, August 29, 1935, 49 Stat. 977, 27 U.S.C.A. § 201 et seq. The purpose of that Act, as stated in § 3, was 'effectively to regulate interstate and foreign commerce in distilled spirits, wine, and malt beverages, to enforce the twenty-first amendment, and to protect the revenue and enforce the postal laws with respect to distilled spirits, wine and malt beverages.'"

Equally strong are the words of Circuit Judge Simons in Jatros v. Bowles, 6 Cir., 143 F.2d 453, 455: "Followed to its logical conclusion, the appellant's construction, if valid, would mean that the federal government no longer has power to punish theft of intoxicants from interstate shipments of alcoholic beverages under the authority of the so-called Car Seal Act, nor to regulate or prohibit unfair trade practices in respect to such commodities through the Federal Trade Commission, nor to regulate tariffs through orders of the Interstate Commerce Commission, nor to prohibit unfair labor practices affecting commerce in intoxicants by brewers or distillers under the authority of the National Labor Relations Act, 29 U.S.C.A., § 151 et seq., nor to prescribe minimum wages or maximum hours for employees in such enterprises under the authority of the Fair Labor Standards Act, 29 U.S.C.A., § 201 et seq. These implications demonstrate the tenuousness of the appellant's broad contentions." (Italics ours.)

And see, also, Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194; Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189; Hayes v. United States, 10 Cir., 112 F.2d 417; Schlitz Brewing Co. v. Johnson, 6 Cir., 123 F.2d 1016; United States v. Colorado Wholesale Wine & Liquors Association, D.C., 47 F.Supp. 160.

■ Monastery next contends that "the conspiracy here charged required participation in the consummated substantive offense of the same participants and hence the conviction for conspiracy to commit the identical substantive offense is erroneous." This principle, we think, is inapplicable to the case before us. Usually the principle is applied to situations in which

the concurrence (or agreement) and the substantive crime (or consummated offense) are so intimately and so closely connected that they in reality constitute a single act. Adultery is frequently cited as probably the clearest of such cases. See 2 Wharton on Criminal Law, § 339; Clark and Marshall on the Law of Crimes, 2d Ed., § 134, p. 195. See, also, Shannon v. Commonwealth, 14 Pa. 226; Miles v. State, 58 Ala. 390; United States v. Katz, 271 U. S. 354, 46 S.Ct. 513, 70 L.Ed. 986; United States v. Zeuli, 2 Cir., 137 F.2d 845; United ed States v. Dietrich, C.C.Neb., 126 F. 664.

But, as Circuit Judge Parker pointed out, this principle is to be confined to very narrow limits. Lisansky v. United States, 4 Cir., 31 F.2d 846, 849, 67 A.L.R. 67. In the Katz case, supra, Mr. Justice (now Mr. Chief Justice) Stone was careful to state, 271 U.S. at page 355, 46 S.Ct. 513, 70 L. Ed. 986; "as the defendants in each case were one buyer and one seller, and as the agreement of the parties was an essential element in the sale, an indictment of the buyer and seller for a conspiracy to make the sale would have been of doubtful validity." (Italics ours.) In the Dietrich case, supra, the problem was complicated by the fact that the act of a Congressman in receiving, or agreeing to receive, a bribe and the act of an outsider in offering, or agreeing to offer, a bribe to a Congressman, were made separate offenses by the statute and, further, Circuit Judge (afterwards Mr. Justice) Van Devanter qualified his statements by the words (126 F. at pages 667–668): "because no other concert and plurality of agents are here charged, we are of opinion that the acts described in this indictment do not constitute a conspiracy under section 5440 [18 U.S.C.A. § 88]." (Italics ours.) A similar limitation seems to have been recognized by Circuit Judge Learned Hand in the Zeuli case (137 F.2d 845 at pages 846–847). Circuit Judge Adams, in Thomas v. United States, 8 Cir., 156 F. 897, 903–905, 17 L.R.A.,N.S., 720, expressly interprets the Dietrich case as limited to the necessary participants in the consummated crime, and there is a like holding by Circuit Judge Hough, in Vannata v. United States, 2 Cir., 289 F. 424, 427–429.

When, therefore, as in the instant case, the conspiracy embraces not merely the necessary parties to the illegal sale, the seller and the buyer, but other conspirators as well, we think that Monastery's alto-

gether technical contention is of no avail. In Clark & Marshall, supra, the rule is thus stated: "If, however, the contemplated crime be one of which concert or consent is a constituent part, such as fornication, adultery, bigamy, incest and the like, the mere *agreement or accord of the parties to the offense* cannot be so separated from the offense itself as to support an indictment for conspiracy." (Italics ours.) Then in a footnote to this statement it is said: "But the implication of a third person will make it a conspiracy. State v. Clemenson, 123 Iowa 524, 99 N.W. 139." We might also point out, in this connection, that Section 1420.1 of Maximum Price Regulation 193, after condemning the selling, buying and delivering of domestic distilled spirits above the ceiling price, goes on further to declare: "No person shall agree * * * to do any of the foregoing."

■ The final contention of Monastery is "there was a total failure of evidence to show that the defendant corporation was to receive any benefit from the conspiracy. * * * The government's case, instead of showing benefits to the corporation growing out of the personal acts of its then president, demonstrates conclusively that the acts attributed to him by Davis, if true, were definitely to its detriment." We do not accept benefit as a touchstone of corporate criminal liability; benefit, at best, is an evidential, not an operative, fact.

■ The generally accepted rule is thus laid down: "A corporation may be held criminally responsible for acts committed by its agents, provided such acts were committed within the scope of the agents' authority or course of their employment." 19 C.J.S., Corporations, § 1362. In New York Central & Hudson River R. Co. v. United States, 212 U.S. 481, 492-493, 29 S.Ct. 304, 306, 53 L.Ed. 613, Mr. Justice Day quoted with approval this extract from Bishop's New Criminal Law, § 417: "Since a corporation acts by its officers and agents, their purposes, motives, and intent are just as much those of the corporation as are the things done."

Peculiarly applicable here are the words of District Judge Baltzell (in a case of corporate criminal liability for conspiracy in an illegal sale of liquor) in Zito v. United States, 7 Cir., 64 F.2d 772, 775: "*Corporations speak and act through their agents.* There *is abundant proof in the instant case*

*that one McNamara was an agent of the appellant company and that he had authority to sell its products.* Therefore, it naturally follows that his actions in contacting and selling the individual appellants and the Capitol Products Company are binding upon appellant company." (Italics ours.)

And this is also true of the statement of Circuit Judge Biggs, in Mininsohn v. United States, 3 Cir., 101 F.2d 477, 478: "The guilt of the Mininsohns in our opinion is not open to doubt and *their guilty intent must therefore be imputed to the corporate appellant of which they were the heads.*" (Italics ours.)

■ We think the District Judge properly submitted the question of the criminal responsibility of Monastery to the jury. And we further think there was ample evidence to sustain the finding of the jury that Monastery was criminally liable here for the acts of its president, Ostrow.

At a time when whiskey was very scarce, when there was not only a strong seller's market but also a thriving black market, Davis crossed the continent for the purpose of buying whiskey. Davis was told (and subsequent events proved this to be true) that Monastery had whiskey for sale. He did not then know personally any of Monastery's officers. When Davis got in contact with the office of Monastery, he was definitely assured that Monastery (the corporation, not Ostrow) had whiskey for sale but that Ostrow, *Monastery's president,* was the only officer of Monastery who had authority, on behalf of the corporation, to sell Monastery's whiskey.

Davis promptly called upon Ostrow and an agreement was made, with a stipulated "kick-in", for the sale of a large quantity of whiskey. Monastery, through Ostrow, "welshed" on this contract. Davis made another transcontinental trip, another contract was made (this time with a higher "kick-in" than before) and performed. And Ostrow gave Davis (in a seller's market) Monastery's check (not his own personal check) for $1,800 for commissions and expenses of Davis! There was other evidence tending to prove, and altogether consistent with the idea, that Ostrow, both in the negotiations and also in the carrying out of this contract for the sale of whiskey, acted, not as an individual, but in the role of president and representative of

Monastery, within the scope of his corporate capacity, both actual and apparent.

The judgment of the District Court is affirmed.

Affirmed.