PATERNO INVESTING CORP., Plaintiff, v. JACOB KATZ, Defendant.

(Supreme Court, New York Special Term, June, 1920.)

Statutes — construction of — lease — pleading — Laws of 1920, chap. 136.

> Chapter 136 of the Laws of 1920 does not apply in the case of a lease of premises in the city of New York made before April 1, 1920, when the statute became operative.
>
> Where, therefore, in an action for rent of premises in said city, due and payable April 1, 1920, under a lease for two years commencing October 1, 1919, the answer as a defense pleads that the rent sued for is " unjust and unreasonable and the agreement under which the same is sought to be recovered is oppressive" and sets forth facts claimed to constitute a defense under chapter 136 of the Laws of 1920, plaintiff's motion for judgment on the pleadings will be granted.

MOTION for judgment on the pleadings.

Stoddard & Mark (G. L. Ingraham, of counsel), for plaintiff.

H. C. Manheim, for defendant.

LEHMAN, J.  The complaint herein alleges the making of a written agreement on or about June 5, 1919, for the lease of certain premises for a term commencing on October 1, 1919, and ending on September 30, 1921, at the yearly rental of $2,300, payable in equal monthly installments, and that an installment of rent amounting to $191.66 became due and payable on the 1st day of April, 1920, but no part thereof has been paid.  The defendant admits all the allegations of the complaint except the legal conclusion that the rent is due and payable.   Concededly this denial raises no issue but the answer alleges as a defense that the rent for which the action is brought is " unjust and unreasonable and the agreement under which the same is sought to be recovered is oppressive " and, in support of this statement, the defendant sets forth that prior to October 1, 1919, the rent paid to the plaintiff for the same premises under a written lease for the previous year was $1,350 per annum and that the rent of the demised premises has been increased by agreement more than twenty-five per centum over the rent as it existed one year prior to the date of the agreement under which rent is sought to be recovered in this action and as it existed one year prior to the 1st day of October, 1919.   The defendant claims that these facts constitute a defense under the provisions of chapter 136 of the Laws of 1920.   The defendant as a counterclaim also seeks under similar allegations to recover the difference between the monthly payments made on the first day of each month from October to May at the rate of $191.66 and the " fair and reasonable rent " for the said premises.  The plaintiff has replied to the counterclaim and has now moved for judgment on the pleadings.

At the argument the defendant's attorney admitted his inability to show any legal basis for his counterclaim.  If the statute applies to agreements made in

Supreme Court, June, 1920.        [Vol. 112.

June, 1919, then the agreement was presumptively unjust, unreasonable and oppressive. Even if that be so, the agreement was nevertheless not forbidden by law and the defendant has not endeavored to be released from its obligations or to give up its benefits but on the contrary, until April 1, 1920, the defendant received the stipulated consideration and paid the stipulated amount of rent. The plaintiff had a right to make the agreement and to demand and receive the rent on the first day of each month. The rent then became its property, lawfully obtained and lawfully retained. The legislature has no power and has claimed no power to deprive the plaintiff of this property and to transfer it to the defendant after the defendant has paid it over under no mistake of fact, no misrepresentation and in accordance with a legal and binding contract and in return for a stipulated consideration. If the legislature had attempted to pass a law which would give the defendant a right of action against the plaintiff for moneys properly received under a claim at that time enforcible in a court of law, its acts would have been outside of its constitutional powers beyond any possible argument. The legislature has, however, not expressly provided that a tenant shall have a right of action to recover rent paid and it would be absurd to hold that the legislature intended to give such right of action by implication in cases where it was without power and where its action would be subversive of all constitutional principles.

The question whether the facts alleged set forth a good defense requires more consideration. The statute provides that:

" Section 1. Unjust, unreasonable and oppressive agreements for the payment of rent having been and being now exacted by landlords from tenants under stress of prevailing conditions whereby the freedom of contract has been impaired and congested housing

conditions resulting therefrom have seriously affected and endangered the public welfare, health and morals in certain cities of the state, and a public emergency existing in the judgment of the legislature by reason thereof, it shall be a defense to an action for rent accruing under an agreement for premises in a city of the first class or in a city in a county adjoining a city of the first class occupied for dwelling purposes, other than a room or rooms in a hotel, lodging house or rooming house, that such rent is unjust and unreasonable and that the agreement under which the same is sought to be recovered is oppressive.

" § 2. Where it appears that the rent has been increased more than twenty-five per centum over the rent as it existed one year prior to the time of the agreement under which the rent is sought to be recovered, such agreement shall be presumptively unjust, unreasonable and oppressive."

If in fact an emergency exists and conditions have arisen " which seriously affected and endangered the public welfare, health and morals in the city of New York " it was not only the right but the duty of the legislature to pass statutes which would tend reasonably to correct the conditions and remove the danger to the public welfare, health and morals. The fact that housing conditions are congested is so well known that the courts might well take judicial notice of it and certainly have no right to nullify the declaration of the legislature that such conditions exist. The legislature has passed this statute to remedy in part this condition and the court must now consider whether the statute was intended to cover cases where the rent was payable under a lease made before the act was passed and if so, whether the act was constitutional.

It is to be noted that the act does not expressly provide that it shall apply to leases for a definite term

made before April 1, 1919, and though the act is general in form and sufficiently broad to cover all agreements made before as well as after the date of the statute, the courts should not construe it as applying to contracts for a definite term made before that date, unless the intention of the legislature to include such contracts is clear. " The general rule is that statutes are to be construed as prospective only. (27 Halsbury's Laws of England, page 159.) It takes a clear expression of the legislative purpose to justify a retroactive application." *Jacobus* v. *Colgate,* 217 N. Y. 235, 240. In the statute now under consideration I find no such clear expression of intention and it does not even appear that the inclusion within the statute of past contracts would tend to relieve the conditions which in the opinion of the legislature are harmful to the public. It may be that a prohibition placed upon a landlord against entering into contracts in the future at more than a reasonable rental might place landlord and tenant upon a more equal footing and thereby tend to fairer contracts between the parties and possibly a reduction of rent on all dwellings to a reasonable figure and might tend to relieve the present unhealthy congestion to at least a small degree by distributing the possible tenants upon a more equable basis among the available apartments but it is somewhat difficult to see how a law which would permit a tenant to retain his dwelling and interpose as a defense to an action for rent, that his contract was unreasonable or oppressive where the contract was made before the legislature had declared that an emergency existed, would in the slightest degree tend to restore freedom of contract for the future or to relieve the present congestion. It would impair the tenant's obligation under the contract for the tenant's financial benefit but it would apparently have no other effect.

A fundamental principle of our government embodied in our Federal Constitution is that the obligations of contracts lawfully made must be protected and the states are expressly forbidden from passing laws which impair the obligations of contracts. It is true that parties cannot, by contract, obtain a vested right to injure the public or divest the legislature of its power to enact laws for the protection of the public or the advancement of the general welfare, but the sanctity of contractual obligations, lawful in themselves, must be preserved and the legislature cannot give to a party to a contract, binding when made, an option to tender in satisfaction of his contractual obligation an amount smaller than he agreed to pay. The legislature of the state of New York has in the past been as vigilant as the courts in protecting the sanctity of contracts and there is nothing in the present statute to show that the legislature intended in this instance to exceed the clear limitations of its authority. It neither could nor intended to impair the obligation of contracts entered into before the law was passed, by permitting a tenant to interpose as a defense to a contract that though binding when made its terms are onerous and oppressive. It is quite evident that the legislative intent was to provide that in all tenancies created after April 1, 1920, or continued or renewed either by agreement or by operation of law, there must be an implied term that the tenant may urge as a defense that the rent reserved is unjust, unreasonable and oppressive and the constitutionality of that statute is not in any way involved in the decision of this motion.

Plaintiff's motion for judgment is, therefore, granted, with ten dollars costs.

Motion granted, with ten dollars costs.