Sylvan Mortgage Company, Plaintiff, *v.* Albert M. Stadler, Defendant.

(Municipal Court of the City of New York, Borough of Manhattan, Fifth District, December, 1920.)

Landlord and tenant — statutes — evidence — duress — Laws of 1920, chap. 136, § 1 — Laws of 1920, chap. 944, § 4.

Chapter 944 of the Laws of 1920, in effect September 27, 1920, is not a new statute but an amendment of chapter 136 of the laws of that year, which went into effect April 1, 1920, and is prospective only, and section 4 of the later statute being identical with section 1 of the earlier statute, is retroactive only to April 1, 1920. (P. 660.)

Before April 1, 1920, while defendant was in possession as lessee of a portion of an apartment house in the city of New York for a term of two years beginning October 1, 1918, a new lease for two years beginning October 1, 1920, was entered into between defendant and plaintiff, who had acquired the title to the building, at a rental ninety-two and three-tenths per cent greater than the then existing rent. In an action to recover the first installment of rent under the new lease, *held,* that defendant could not invoke the aid of chapter 136 or chapter 944 of the Laws of 1920, and thereby cast the burden of proving the reasonableness of the rent upon the landlord. (P. 669.)

Defendant's possession of the premises after October 1, 1920, was not by virtue of the new lease, but he was holding over under the terms of the expired lease as authorized by the now existing statute. (Id.)

While no general rule can determine what facts are necessary to plead or prove tending to show that defendant, possessed with fear of the loss of his home, was deprived of the free exercise of his will when he executed the lease, the existing housing shortage without the support of other facts was insufficient to sustain the defense of duress. (P. 670.)

Evidence considered, and *held,* that the new lease, having been shown to be tainted with duress in its execution, judgment is directed for the defendant.

Action to recover the first installment of rent under a written lease.

Municipal Court of New York, December, 1920.    [Vol. 113.

Katz & Levy, for plaintiff.

Herman C. Robinson (Franklyn M. Silverstein, of counsel), for defendant.

SPIEGELBERG, J.    The plaintiff seeks to recover the first installment of rent under a written lease executed on March 25, 1920.    The term was for two years beginning October 1, 1920; the rent was payable monthly in advance.    The premises demised consisted of a portion of a floor in an apartment house to be used for dwelling purposes only.    At the time of making the lease the defendant was in occupancy of the premises under a lease of two years beginning October 1, 1918.    The rent reserved in the lease of March 25, 1920, represents an increase of ninety-two and three-tenths per cent over the rent in the former lease.    The defendant as a defense relies, *first,* upon chapter 944 of the Laws of 1920, claiming in the language of the statute that the rent is unjust and unreasonable and that the agreement under which the same is sought to be recovered is oppressive; and *second,* that the written lease was signed under duress.

The defendant cannot invoke the aid of chapter 944. That statute is not retroactive beyond April 1, 1920. Chapter 944 is not a new statute.    It is an amendment of chapter 136 of the Laws of 1920 which went into effect on April 1, 1920.    Section 1 of chapter 136 permitting the defense of unreasonableness of rent has not been affected by amendment.    It is identical with section 1 of chapter 944.    That section is, therefore, retroactive beyond the date of its enactment, to wit, September 27, 1920, but only to April 1, 1920.    That chapter 136 is prospective only has been decided in *78th Street & Broadway Company* v. *Rosenbaum,* 111 Misc. Rep. 577, and *Paterno Investing Corp.* v. *Katz,* 112 id. 242; affd., 193 App. Div. 897.    If there

was any doubt as to the correctness of these rulings it has been set at rest by the failure of the legislature in the extraordinary session of September, 1920, to make the necessary amendments and its failure to do so may be accepted as an adoption of the judicial construction. *Komada & Co.* v. *United States,* 215 U. S. 392. The acquiescence of the legislature is all the more apparent as extracts from the *Rosenbaum Case, supra,* were appended as an exhibit to the report of the joint legislative committee on housing transmitted to the legislature on September 20, 1920. Legislative Document — Extraordinary Session — No. 11.

A more difficult and serious question arises in the disposition of the defense of duress. As the courts are flooded with cases where that issue is involved, a more detailed discussion may be proper. The early common law limited duress to duress by imprisonment and duress *per minas.* In order to come within the latter class, the threats had to be of a nature to involve fear of life or bodily harm. Fear of loss of property was not sufficient. As stated in 4 Cruise Dig. 407: " If a man, through a reasonable or well-founded fear of death, or mayhem, or loss of limb, is forced to execute a deed, he may afterwards avoid it. But Lord Coke says it is otherwise where a deed is executed for fear of battery, which may be very light; or burning his houses, or taking away or destroying his goods, or the like; for these he may have satisfaction, by recovery of damages."

The early standard for determining the existence of duress was that the threats of violence must be such as to overcome the mind of a courageous man. Subsequently a more rational basis was established so as to hold that duress may consist of any conduct which would overpower the mind of an ordinary firm man. The more advanced rule, however, and the one now

Municipal Court of New York, December, 1920. [Vol. 113.

generally accepted by the courts is that duress exists where the threats are such as to overpower the mind of the person subjected thereto. 1 Page Cont. § 482. As the same learned author says: " The test of duress is not the means by which the party was compelled to execute the contract, but rather the state of mind which is induced by the means employed." § 481. This rule found expression in this state in *Eadie* v. *Slimmon,* 26 N. Y. 9.

Duress of property was not admitted by the common law. In this country we broke away from that rule. The first courts to hold that duress of property was sufficient to void a contract were those of South Carolina. *Sasportas* v. *Jennings,* 1 Bay, 470, and *Collins* v. *Westbury,* 2 id. 211. These authorities were followed in *Forshay* v. *Furgeson,* 5 Hill, 154, 158, where Bronson, J., says: " There is nothing but the form of a contract in such a case, without the substance. * * * why should the wrong doer derive an advantage from his tortious act?" That quotation strikes the keynote of the increasing liberality of the application of the defense of duress. Professor Williston in his great work on the Law of Contracts recently published states (Vol. 3, § 1603) that each case is to be considered on its own special circumstances and quotes in the text with approval the following quotation from *Joannin* v. *Ogilvie,* 49 Minn. 564: " The real and ultimate fact to be determined in every case is whether or not the party really had a choice, whether ' he had his freedom of exercising his will.' "

In discussing the modern doctrine, it is said in 13 C. J. 402: " The test is not so much the means by which the party was compelled to execute the contract as it is the state of mind induced by the means employed — the fear which made it impossible for him to exercise his own free will."

The exercise of the free will power of both contracting parties is essential to every contract. Where it is lacking the law will give relief. Where there is no consent, there is no contract. In *Galusha* v. *Sherman,* 105 Wis. 263, which contains an interesting discussion of the development of the principles of duress, the court says at page 278: " The question in each case is, Was the alleged injured person by being put in fear by the other party to the transaction for the purpose of obtaining an advantage over him, deprived of the free exercise of his will power, and was such advantage thereby obtained? "

The courts have given enlightened significance to the meaning of duress. The remarks made by Cardozo, J., in *Wood* v. *Duff-Gordon,* 222 N. Y. 88, at page 91, are peculiarly applicable: " The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view to-day." The distinctions which have been made differentiating duress in the case of a man of ordinary courage or of an aged person or of a child are being swept away. The condition of mind produced by threats which render a person incapable of exercising his free will is and should be the only inquiry.

Applying this test to the facts in the case under consideration it appears that the plaintiff took title to the building containing the defendant's apartment on February 20, 1920. On March 10, 1920, the defendant and other tenants were notified that the plaintiff required possession of their respective apartments on September 30, 1920, the date of the expiration of the then existing leases. On March 12, 1920, the defendant went to the office of the agents of the plaintiff who tendered him a lease of the apartment for a term of two years from October 1, 1920, at a rental of ninety-two and

Municipal Court of New York, December, 1920.    [Vol. 113.

three-tenths per cent greater than the then existing rental. The defendant protested against the rent as exorbitant and requested time to determine what to do. He offered a fifty per cent increase which was declined. He was told that unless he signed the lease as submitted his apartment would be leased to others and that on September thirtieth he would be put out of his home. The defendant at the time was suffering from a severe ailment causing physical weakness and mental depression. His appearance indicated the low state of his health and he informed the plaintiff's agent thereof. The agent did not discuss the reason for the large increase in rent. Finally the defendant was told he must make up his mind one way or the other by March twenty-second. The interim was used by the defendant and his daughter in attempting to get a suitable apartment but his efforts were in vain. On March 22, 1920, the defendant called again on the plaintiffs' agent. He renewed his offer of a fifty per cent increase, protested again against the unreasonableness of the rent demanded, the exaction of which would entail a great sacrifice and stated that he and his daughter were very much worried at the thought of having no home after October first. The agent declined to accede to the defendant's request, whereupon, again protesting, he signed the lease upon which this action is brought. Subsequent offers by the defendant to pay a fifty per cent increase were not accepted. Not all the facts as found by me were admitted by the plaintiff. Where there was a conflict I have accepted the defendant's version. I do not wish to be understood that the plaintiffs' agent wilfully misstated any facts. Quite the contrary. I think he was absolutely honest. His memory was rather vague, which is only natural as he had a large number of similar transactions while the defendant had only one. Under these circumstances the

interviews would make a more lasting impression upon the defendant and his recollection would be better. The plaintiff conceded that if it had no right to make the ninety-two and three-tenths per cent increase the rent was presumptively unreasonable, and one of its witnesses testified that the rent fixed in the lease was not based upon a percentage of a reasonable return to the plaintiff. It is superfluous to refer in detail to the crisis which confronted and still confronts the inhabitants of this city owing to the housing shortage. It is a matter of common knowledge and has agitated the public mind for a long time. The courts will take judicial notice of the situation.

I am of the opinion that all the requirements permitting the modern doctrine of duress to be invoked are present in this case. In the case of *78th Street & Broadway Co.* v. *Rosenbaum,* 111 Misc. Rep. 577, in discussing the constitutionality of chapter 136 of the Laws of 1920, I had occasion to discuss some of the phases of the question to be determined herein (see pp. 589 *et seq.*) I said on page 591: " It is therefore, apparent that the doctrine is firmly imbedded in our jurisprudence that where one takes an undue advantage of another's situation and circumstances and thereby obtains an unfair and unconscionable contract the court may grant relief. This condition applies to the making of leases at the present time. Landlords and tenants cannot contract on an equal basis. The tenant is compelled by sheer necessity of having a place to dwell in to agree to any conditions that may be imposed by the landlord."

That conclusion is supported by numerous authorities of text writers and cases which are cited and quoted in that case. I deem it, therefore, unnecessary to repeat them but base strong reliance upon them in support of this decision.

Municipal Court of New York, December, 1920.    [Vol. 113.

The defendant was not free to act since he could only exercise his judgment in determining which of two courses he should select, either to submit to the unreasonable demands of the plaintiff or to face the loss of his home. He was willing to sign the lease and pay a reasonable rent. The plaintiff refused to accede thereto and thus the free exercise of the will of the defendant was impeded and he was deprived of liberty of action. The plaintiff procured the contract by taking advantage of the necessitous condition of the defendant and the insurmountable plight in which he was placed. That the courts will give relief where one party has taken an unfair advantage of another's distress has never been questioned in this state. In *Neilson* v. *McDonald*, 6 Johns. Ch. 201, the court invalidated a bond and mortgage which was given by the plaintiff to secure his own debt and that of his son in order to prevent the levy of an execution on a judgment entered against him. Although the validity of the judgment and the execution was not questioned, the court held that it was the means of practicing oppression upon the plaintiff.

In *Rourke* v. *Storey,* 4 E. D. Smith, 54, an employee was discharged in Panama. He was compelled to give a receipt in full on the payment of a sum less than the amount actually due for his wages. At the time he had no other means aside from his wages to procure his passage home. The court held that the plaintiff was entitled to recover the balance due him as the receipt was obtained without his assent and, therefore, amounted to duress.

In *Faulkner* v. *Faulkner,* 162 App. Div. 848, the court held that circumstances of extreme necessity and distress, although not accompanied by any direct restraint or duress, may justify the setting aside of a deed.

In *Kilpatrick* v. *Germania Life Insurance Co.,* 183

N. Y. 163, it is held that a refusal to accept payment of a mortgage debt with interest and cost and to discharge a pending foreclosure proceeding except upon the payment of a bonus, amounted to duress. The court says at page 169: "In effect the defendant held plaintiffs' property in its grasp through its lien thereon and would not surrender it until the unlawful exaction was complied with. The payment was made to free the property from the duress as much as if it had been a chattel and the defendant had it in his possession under a pledge, refusing to part with it unless the bonus was paid."

In *Harmony* v. *Bingham,* 12 N. Y. 99, the court, at page 116, says: "When a party is compelled, by duress of his person or goods, to pay money for which he is not liable, it is not voluntary but compulsory." See, also, *Van Dyke* v. *Wood,* 60 App. Div. 208, cited in the *Rosenbaum Case, supra,* and *Aronoff* v. *Levine,* 105 Misc. Rep. 668, where many of the authorities are reviewed by Mr. Justice Cropsey.

Of course, no state of facts like the present one due to the acute housing shortage can be shown to which the principle of duress has been made applicable. But a novel situation has never been the ground for denying warranted relief. Each case must be judged on its merits. Very appropriate language is used in *Barnett Oil & Gas Co.* v. *New Martinsville Oil Co.,* 254 Fed. Repr. 481, where after discussing the more liberal views held by the American courts on the applicability of the defense of duress the court says at pages 486 and 487: "The result to my mind leads to the very familiar conclusion that such application must, in the final analysis, depend upon the facts of such case, and that the chancellor or the judge must be controlled by a sound discretion in each; that no hard and fast rule can be established; the effort must be to see the right and justice in the case and do it."

Municipal Court of New York, December, 1920.    [Vol. 113.

It is maintained, however, that a threat to do a lawful act cannot constitute duress, and that the plaintiff was justified in threatening dispossess proceedings unless the lease was signed. This is undoubtedly the general rule. *Dunham* v. *Griswold,* 100 N. Y. 224; *Lilienthal* v. *Bechtel Brewing Co.,* 118 App. Div. 205; *McGuire & Co.* v. *Vogel Co.,* 164 id. 173. But that rule implies that threats of legal proceedings are made for the purpose of obtaining what the party making the threats is entitled to. Means in themselves lawful may be so oppressively used as to amount to an abuse of legal remedies, although what amounts to such an abuse is not susceptible of exact definition. 3 Williston Cont. § 1607. And as stated in 1 Page on Contracts (§ 490) a threat to institute civil litigation may amount to duress under circumstances of especial hardship. In this case the vice of the transaction does not consist in the procuring of the lease nor even in the threat of dispossess proceedings, but in the fact that the plaintiff took advantage of the helpless situation of the defendant to exact an oppressive rent. If the defendant, even impelled by fear of being ousted on October first, had signed a lease containing a fifty per cent increase of rent or any other sum that was reasonable, the defense of duress would not be available. What was said in the *Kilpatrick Case, supra,* applies *mutatis mutandis* to this case. The plaintiff held the defendant's property in its grasp to the extent of the increase in rent beyond what was reasonable and would not consent to a renewal of the lease unless an unlawful exaction was complied with.

The claim is also made that inasmuch as a contract obtained under duress is not void but only voidable. the defendant has ratified the agreement. This is not the case. The decision as to ratification or repudiation must be made after the removal of the duress (*Hun-*

*ter* v. *McCammon,* 119 App. Div. 326) or as stated by Professor Williston, *supra,* section 1623: " No act can constitute a ratification however, which was done while the fear of undue influence which operated to induce the original transaction is still effective." The duress in this case continued until the date when the lease was to go into effect or at least until September 27, 1920, when by statute dispossess proceedings except in certain enumerated cases were suspended for two years. The defendant did not take advantage of any provisions of the lease. His possession after October first was not by virtue of the instrument of March 22, 1920, but he was holding over under the terms of the expired lease and this was done under authority of the now existing statute. He retained no advantage under the instrument of March 22, 1920, except perhaps the physical possession of the instrument itself which is worthless to all intents and purposes.

As very many cases on leases made prior to April 1, 1920, and to take effect after that date involving the defense of duress are now before the courts it may be well to make some additional suggestions affecting the defense of duress against the enforcement of such leases. The fact that the rent reserved in the lease is unreasonable and unconscionable must be pleaded in the answer and must be established at the trial by the defendant. He cannot invoke the aid of chapters 136 or 944 of the Laws of 1920 and thereby cast the burden of proving the reasonableness of the rent upon the landlord. If the rent fixed in the lease was arrived at after negotiations between the parties with the free assent of the tenant the defense is not maintainable although the rent may be in excess of what may be deemed reasonable. Where the tenant has paid one or more installments of the rent after October 1, 1920,

he has ratified the agreement and waived the voida-bility thereof. Whether the defense of duress survives payments of rent between April 1, 1920, and October 1, 1920, under leases made prior to April 1, 1920, is a grave question for the reason that the safety of the continuance of the home was not assured until the passage of the laws of September 27, 1920. The prior legislation did not suspend eviction, but merely extended the time within which discretionary stays could be granted. The answer must also contain facts upon which the defendant relies for his defense of duress. To plead the defense without supporting allegations is a conclusion of law. It is impossible to lay down a general rule to determine what facts are necessary to plead or prove showing that the defendant, possessed with fear of the loss of his home, was deprived of the free exercise of his will. I am not prepared to hold that the existing housing shortage in itself, without the support of the other facts, is sufficient upon which to base the defense of duress.

Entertaining the views herein expressed I am compelled to hold that the instrument sued upon is void and unenforceable. The plaintiff is undoubtedly entitled to a higher rent than the one reserved in the prior lease, and the defendant so admits. The court, however, has no right to make a new contract for the parties. Its power is limited to decide whether or not the contract is tainted with duress. Unless the parties can agree upon the amount to be paid by the defendant, the plaintiff is relegated to an action for the recovery of the reasonable rental value.

There is judgment for the defendant.

*Judgment for defendant.*