In the Matter of MORRIS COHEN, Respondent, against GEORGE STARKE, as City Marshal of the City of New York, Respondent.

GREENBAUM NOVELTY CORP. et al., Appellants.

First Department, May 18, 1945.

*Mortimer Haas* for Greenbaum Novelty Corp., appellant.

*Louis Schlesinger* for Louis A. Shikora, for appellant.

*Robert Hoffman* of counsel (*Samuel S. Kolman* with him on the brief), for petitioner-respondent.

GLENNON, J.   Two tenants, relying upon the provisions of the Commercial Emergency Rent Law, have appealed from an order directing a City Marshal of the City of New York to execute warrants of dispossess by removing them from the commercial space they occupy in petitioner's building.

Both tenants were in possession of their respective commercial spaces under leases which could be terminated by the landlord prior to their expiration.   Exercising this privilege, the petitioner, as landlord, notified the tenants that he had elected to cancel and terminate their leases as of January 8, 1945. Neither tenant surrendered possession and on January 9, 1945, the landlord instituted summary holdover proceedings in the Municipal Court.   Answers were interposed and the proceedings came on for trial on January 15, 1945.   During the trial a stipulation was entered into upon the minutes of each proceeding, whereby the tenants withdrew their respective answers and consented to the entry of final orders in favor of the landlord and the issuance of warrants forthwith.   Execution of the warrants, however, was to be stayed until January 31, 1945.

Pursuant to the stipulations final orders were entered on January 15, 1945, and warrants of dispossess were issued thereon by the clerk on January 16, 1945. The following day the warrants were received by the City Marshal but execution was stayed until January 31, 1945, in accordance with the agreement.

After the stipulations had been entered into the tenants paid the landlord their rent for the entire month of January. The tenant Greenbaum Novelty Corp. forwarded its check on January 15, 1945, while the tenant Louis A. Shikora mailed his check on January 27, 1945. The remittances were received and accepted by the landlord as payment for the use and occupation by the tenants of their respective commercial space up to January 31, 1945. When the tenants remained in possession after that date the landlord made demand upon the City Marshal to execute the warrants. The latter refused upon the ground that execution of the warrants was stayed by the provisions of chapter 3 of the Laws of 1945, which became a law on January 24, 1945.

Section 8 of that law, so far as pertinent, provides as follows: " § 8. So long as the tenant continues to pay the rent to which the landlord is entitled, under the provisions of this act, no tenant shall be removed from any commercial space, by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which is inconsistent with any of the provisions of this act, unless: *   *   * ."

Section 2 defines a tenant as: " A lessee, sublessee, licensee, or other person entitled to the possession or to the use or occupancy of the whole or a part of any commercial space."

After the order appealed from was made the law was amended on March 28, 1945, by chapter 315 of the Laws of 1945. The amending legislation, which by its terms is to be construed as in effect since January 24, 1945, added a provision to section 8 prohibiting the removal from possession of any tenant who complied with the conditions of the law " notwithstanding the issuance of any order to dispossess, warrant or process prior to January twenty-fourth, nineteen hundred forty-five *   *   * ."

On January 24, 1945, the appellants were tenants within the meaning of the act. Both were entitled to the use and occupancy of their respective spaces and both had paid or offered the amounts to which the landlord was entitled under the provisions of the law. So long as they were ready, able and willing to meet the conditions imposed their possession was not to be interfered with during the effective period of the act. The City Marshal was therefore justified in refusing to execute the warrants since section 8, as originally enacted, prohibits "any person" from removing such a tenant from possession notwithstanding that his lease has expired or "otherwise terminated", as in this case by summary proceedings. When the amendment to section 8 is considered the right of the appellants to continue in possession is clearly established.

The petitioner contends that section 8, as amended, is unconstitutional insofar as it applies to the facts in this proceeding since it prevents the execution of warrants issued prior to January 24, 1945. It is argued that the section, as amended, deprives him of vested property rights and has the effect of recalling and again putting in jeopardy rights established by the final orders prior to the effective date of the law.

The section, as originally passed or as amended, does not take away any rights acquired by the final orders. It merely suspends the enforcement of those rights during an emergency period and at the same time assures the landlord a reasonable rental for his property. It may be said that the amendment should not be applied to the facts here presented since it was enacted long after the stay agreed to had expired. In this connection it appears that at the time the amendments were passed the tenants were still in possession and the warrants still unexecuted. That being so, their execution was stayed by the amendment so long as the appellants made the payments required of them. However, assuming, but not conceding, that the March 28, 1945, amendments do not apply here, still the section as originally enacted is sufficiently broad, as hereinbefore indicated, to extend to the facts in this proceeding.

The petitioner questions the constitutionality of the entire legislation. He contends that it is invalid in that it deprives him "of his property without due process of law; denies to him the equal protection of the law (Federal Const. Fourteenth Amendment); takes private property for private use without just compensation (Const. State of New York, Art. I, Sec. 6); and impairs the obligation of contract (Federal Const. Art. I, Sec. 10)." In this opinion, we confine ourselves to the grounds of alleged unconstitutionality urged by respondent.

There is no question but that the legislation does infringe upon one or more of the constitutional guaranties. However it should be borne in mind that those guaranties are subject to the inherent power of the State to control them if the public interest renders their limitation necessary. Instances may and do arise where certain rights and freedoms must be temporarily suspended in order that the vital interests of the people as a whole may be preserved and protected for the common good of all. In this connection Chief Justice HUGHES, in *Home Bldg. & L. Assn.* v. *Blaisdell* (290 U. S. 398, 434), said: " Not only is the constitutional provision qualified by the measure of control which the State retains over remedial processes, but the State also continues to possess authority to safeguard the vital interests of its people. It does not matter that legislation appropriate to that end ' has the result of modifying or abrogating contracts already in effect.' *Stephenson* v. *Binford*, 287 U. S. 251, 276. Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment presupposes the maintenance of a government by virtue of which contractual relations are worth while,— a government which retains adequate authority to secure the peace and good order of society. This principle of harmonizing the constitutional prohibition with the necessary residuum of State power has had progressive recognition in the decisions of this Court.'

The legislation here involved was enacted as an exercise of the police power of the State to meet an existing public emergency. The Legislature found that landlords were exacting unjust, unreasonable and oppressive leases and agreements from tenants of commercial space in certain cities, and that such practices had become so intensified as to give rise to conditions " threatening to obstruct war production and the production and distribution of essential civilian commodities, and to cause inflation." An emergency was therefore declared to exist and the legislation here involved was enacted to curb the evils arising therefrom.

Although it is primarily for the Legislature to determine whether an emergency exists, such determination, while entitled to great weight and respect, is not conclusive upon the courts. It is for the courts finally to determine whether an emergency in fact exists to warrant the enactment of emergency police measures. (*Block* v. *Hirsh*, 256 U. S. 135; *Chastleton Corp.* v. *Sinclair*, 264 U. S. 543.)

This court finds that the emergency which the Legislature found to exist did in fact exist. It was common knowledge that such conditions prevailed in certain cities which if permitted to continue unchecked would not only seriously hamper our war effort and invite inflation, but would also curtail and interfere with the production and distribution of essential civilian commodities already substantially reduced by the conversion to a war economy. Action on the part of the Legislature was imperative in order to prevent serious injury to public health, safety and the general welfare of the people of this State, as well as to promote the successful prosecution of the war and to prevent inflation. Under such conditions the Legislature enacted chapter 3 of the Laws of 1945, as amended, to regulate, control and stabilize the rents of commercial space during the period of the emergency, which still exists.

Save for certain specified exceptions not here material, the legislation suspends, from January 24, 1945, until July 1, 1946, all possessory remedies available to owners of commercial space for the purpose of removing therefrom tenants in possession on the effective date of the law, provided, however, that the tenants continue to pay to the landlords the rent to which they are entitled under the provisions of the Act.

Rent control of private property in times of emergency is not new in this State. The Emergency Rent Laws, chapters 942 to 945 and 947 to 952 of the Laws of 1920, were enacted at a time when " there existed in the larger cities of the State a social emergency, caused by an insufficient supply of dwelling houses and apartments, so grave that it constituted a serious menace to the health, morality, comfort and even to the peace of a large part of the people of the State." (*Levy Leasing Co.* v. *Siegel,* 258 U. S. 242, 245, affg. 230 N. Y. 634.) The laws enacted to cope with the situation suspended for a time all rights of the owners to recover possession, provided a reasonable rental was paid. The validity of those laws was questioned on the same constitutional grounds as are now urged by the petitioner, but they were upheld as a valid exercise of the police power of the State. (*People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429, writ of error dismissed *sub nom. People ex rel. Brixton Operating Corp.* v. *La Fetra,* 257 U. S. 665; *Levy Leasing Co.* v. *Siegel,* 230 N. Y. 634, affd. 258 U. S. 242; *People ex rel. Rayland Realty Co., Inc.,* v. *Fagan,* 194 App. Div. 185, affd. 230 N. Y. 653; *People ex rel. H. D. H. Realty Corp.* v. *Murphy,* 194 App. Div. 530, affd. 230 N. Y. 654.) The reasoning employed in those decisions in

upholding the constitutionality of the laws there involved applies with equal, if not greater, force here.

The order appealed from should therefore be reversed, with $20 costs and disbursements, and the application denied.

MARTIN, P. J., TOWNLEY, COHN and CALLAHAN, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements, and the application denied.