RUTH KUPERSCHMID et al., Plaintiffs, v. GLOBE BRIEF CASE CORPORATION, Defendant.

RUTH KUPERSCHMID et al., Plaintiffs, v. ROBERT ELECTRICAL CORP., Defendant.

EAST RIVER HOLDING CORPORATION, Plaintiff, v. MAX DRASCHNER, Defendant.

EAST RIVER HOLDING CORPORATION, Plaintiff, v. SAMUEL DRESSLER et al., Defendants.

Municipal Court of the City of New York, Borough of Manhattan, May 28, 1945.

*Charles Gottlieb, Alexander S. Natanson* and *Marvin L. Lothstein* for Ruth Kuperschmid, Helen Petziner and East River Holding Corporation, plaintiffs.

*Newton Glekel* for Ruth Kuperschmid and Helen Petziner, plaintiffs.

*Milton H. Goldstricker* and *Herbert L. Kanner* for Globe Brief Case Corporation, defendant.

*Albert A. Klein* and *Manuel Davis* for Robert Electrical Corp., defendant.

*Solomon Z. Ferziger* for Max Draschner, defendant.

*Benjamin E. Fernbach* and *Frederick Chambers* for Samuel Dressler and another, defendants.

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd, William F. McNulty, Abe Wagman* and *Herbert A. Einhorn* of counsel), appearing under section 68 of the Executive Law.

GENUNG, J. In these four actions, brought by landlords against tenants, consolidated for purposes of trial, plaintiffs seek to recover several monthly installments of rent falling due under four different leases. Two are for one year and two for two years. All of the leases were made in 1944, with terms to commence, in one case, on January 1, 1945 and, in the other three, on February 1, 1945. Relying on section 7 of chapter 3 of the Laws of 1945, which took effect on January 24, 1945, each of the defendant tenants asserts that the lease reserving the rent was unjust and unreasonable; on the basis of the provisions of section 7 of the Rent Law, each claims that the landlord may not collect more than 15% above the amount of rent the premises brought on March 1, 1943.

For instance, instead of the monthly rent of $150 provided for in the Globe Brief Case Corporation lease, the landlord

would be able to collect only $63.25; instead of the $225 rent provided for in the Robert Electrical Corp. lease, the landlord would receive only $103.50; instead of amounts of $283.33 specified in the Draschner and the Dressler & Bieber contracts, the tenants would be required to pay only $182.08.

Plaintiff landlords attack the legislation upon the ground that it is unconstitutional in that it violates the due process clause and the equal protection of the laws clause of the Fourteenth Amendment and the contract clause of section 10 of article I of the Federal Constitution. On the other hand, the Attorney-General, appearing pursuant to court order entered in accordance with section 68 of the Executive Law, claims that the State's police power was properly invoked for the enactment of the statute and that the legislation was valid even though it affected provisions of contracts previously entered into.

The court is required to determine whether the defendants may rely upon the statutory defense of unreasonable and oppressive rent if their leases were made before the statute was passed. The defense must fall if the statute is unconstitutional or if, being valid, section 7 has only prospective application and does not apply to past leases.

The court is not now concerned with the provisions of section 8 of the act which assures a tenant continued possession of the premises after the expiration of the lease by providing that, during the existence of the emergency, the possessory remedy ordinarily available to the landlord is suspended. It was section 8 which the Appellate Division recently had before it in *Matter of Cohen* v. *Starke* (269 App. Div. 256).

Determining that there was a scarcity of space in commercial loft buildings in New York City, the Legislature incorporated its views of the situation in section 1 of the statute: "Unjust, unreasonable and oppressive leases and agreements for the payment of rent for commercial space in certain cities having been and being now exacted by landlords from tenants under stress of prevailing conditions accelerated by the present war, whereby a breakdown has taken place in normal processes of bargaining and freedom of contract has become an illusory concept, and whereby there have come into existence conditions threatening to obstruct war production and the production and distribution of essential civilian commodities, and to cause inflation, and all of the foregoing situations and conditions being a threat to the successful prosecution of the war and essential civilian activities, and to the public safety, health, and general welfare of the

people of the state of New York, it is hereby declared that a public emergency exists, which is increasing in intensity without slackening and without promise of relief so long as present war conditions continue, and that action by the legislature is imperative and will not permit of delay. It is hereby found by the legislature that for the duration of such emergency, the establishment of a maximum rent for commercial space at a level of fifteen per centum above rents charged on March first, nineteen hundred forty-three, or at a level otherwise determined as provided herein, will curb the evils arising from such emergency and will accomplish the purposes hereby sought to be achieved. This act is declared to be a measure designed to protect and promote the public health, safety and general welfare, to aid the successful prosecution of the war, and essential civilian activities, and to prevent inflation, and is made necessary by an existing public emergency.''

Subdivision (e) of section 2 defines '' Emergency rent '' as '' The rent reserved or payable under any lease, agreement or tenancy of commercial space in force on March first, nineteen hundred forty-three, plus fifteen per centum of such rent; provided that if the commercial space was not used or occupied on such date for commercial purposes, the emergency rent shall be the reasonable rent therefor as of such date, plus fifteen per centum thereof, to be fixed by agreement, by arbitration, or by the supreme court upon the basis of the rent charged on such date for the most nearly comparable commercial space in the same building or other satisfactory evidence.''

Section 4 provides for the fixing of a '' reasonable rent '' in excess of the emergency rent either in the Supreme Court or by arbitration.

Section 7 provides that, in an action to recover rent, '' * * * it shall be a defense that such rent is unjust, unreasonable and oppressive if such rent is in excess of the emergency rent or any rent which may be fixed pursuant to section four of this act, and to the extent of such excess the same shall be uncollectible. The tenant may interpose the defense that the rental value of the commercial space has been reduced by reason of an unreasonable diminution of services, and to the extent that the court shall find that such services have been so diminished, the value thereof shall be allowed in reduction of the rent charged and shall be uncollectible.''

And section 14 provides that the emergency '' * * * is hereby declared to continue until July first, nineteen hundred forty-six.''

The court's first consideration is whether the Legislature had basis for enacting a statute controlling rents for commercial property.

If the conditions enumerated in section 1 of the act did exist, the Legislature was under the duty of enacting a law which would tend reasonably, legitimately and constitutionally to correct those conditions and to reduce or remove the dangers threatened. (*Paterno Investing Corp.* v. *Katz,* 112 Misc. 242, 246, affd. 193 App. Div. 897.) The State has never been denied the power to interfere with the rights of private property, where the safety, health and morals of the community demanded it and, in recent times, the police power has been greatly extended for the protection of the public welfare. The State today possesses police power not only " to prescribe regulations to promote the health, peace, morals, education, and good order of the people," but " to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity " (*Barbier* v. *Connolly,* 113 U. S. 27, 31; see, also, *Eubank* v. *Richmond,* 226 U. S. 137, 142; *Sligh* v. *Kirkwood,* 237 U. S. 52, 59; *C. B. & Q. Railway* v. *Drainage Comm'rs.,* 200 U. S. 561, 592; *Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288, 298).

In *C. B. & Q. Railway* v. *Drainage Comm'rs.* (200 U. S. 561, 592, *supra*) the court wrote: " We hold that the police power of a State embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety." And in the *Sligh* case (237 U. S. 52, 59, *supra*) it was said: " The police power, in its broadest sense, includes all legislation and almost every function of civil government. *Barbier* v. *Connolly,* 113 U. S. 27. It is not subject to definite limitations, but is coextensive with the necessities of the case and the safeguards of public interest. *Camfield* v. *United States,* 167 U. S. 518, 524. It embraces regulations designed to promote public convenience or the general prosperity or welfare, as well as those specifically intended to promote the public safety or the public health. *Chicago &c. Railway* v. *Drainage Commissioners,* 200 U. S. 561, 592."

In enacting the statute, the Legislature relied upon the findings of a joint legislative committee to the effect that there was a shortage of space in commercial premises and that, because of it, landlords of such property were able to seek and obtain unjust, unreasonable and oppressive rents. While a

declaration by a legislature as to the existence of an emergency is not conclusive, it is entitled to " very great respect " (*Levy Leasing Co.* v. *Siegel,* 258 U. S. 242, 246; see, also, *Block* v. *Hirsh,* 256 U. S. 135, 154), and in *Matter of Cohen* v. *Starke* (269 App. Div. 256, *supra*) the Appellate Division, per GLENNON, J., expressly wrote with regard to the present statute that (p. 262) " This court finds that the emergency which the Legislature found to exist did in fact exist."

Even during time of war, however, the existence of an emergency does not justify legislation which unreasonably transgresses the individual's constitutional rights; that is so even when the Federal Government relies upon its war powers (*Hirabayashi* v. *United States,* 320 U. S. 81, 110, 113; *United States* v. *Montgomery Ward & Co.,* 58 F. Supp. 408, 410; *United States* v. *Renken,* 55 F. Supp. 1, 7). As Mr. Justice MURPHY wrote in the *Hirabayashi* case (320 U. S. 81, 110, 113, *supra*): " * * * the war power, like the other great substantive powers of government, is subject to the limitations of the Constitution. * * * While this Court sits, it has the inescapable duty of seeing that the mandates of the Constitution are obeyed. That duty exists in time of war as well as in time of peace, and in its performance we must not forget that few indeed have been the invasions upon essential liberties which have not been accompanied by pleas of urgent necessity advanced in good faith by responsible men." And in *United States* v. *Renken* (55 F. Supp. 1, 7, *supra*) another judge said, " The war power of the United States, like its other powers and like the police power of the States, is subject to applicable constitutional limitations."

The decisions uniformly recognize that the police power, though it may be " ' one of the least limitable of the powers of government ' * * * has its limits and must stop when it encounters the prohibitions of the Constitution." (*Eubank* v. *Richmond,* 226 U. S. 137, 142, 143, *supra;* see, also, *Buchanan* v. *Warley,* 245 U. S. 60, 74; *Penna. Coal Co.* v. *Mahon,* 260 U. S. 393; *Schlesinger* v. *Wisconsin,* 270 U. S. 230; *Weaver* v. *Palmer Bros. Co.,* 270 U. S. 402; *Southern Ry. Co.* v. *Virginia,* 290 U. S. 190; *Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398, 439; *Nashville, C. & St. L. Ry.* v. *Walters,* 294 U. S. 405; *Women's Kansas City St. Andrew Soc.* v. *Kansas City, Mo.,* 58 F. 2d 593.)

In determining whether section 7 of the statute should be given retrospective or only prospective application, it is important to ascertain whether the Legislature could constitutionally

enact a provision such as section 7 to operate upon contracts and leases already in existence.

Section 10 of article I of the United States Constitution provides that "No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *."

While there is no absolute freedom of contract and while there may be no objection to legislation restricting the power to make contracts in the future (*Chicago, B. & Quincy R. R. Co.* v. *McGuire,* 219 U. S. 549, 567; *Muller* v. *Oregon,* 208 U. S. 412, 421) or modifying contracts previously made, as long as substantive rights are substantially preserved (*Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398; *Louisville Bank* v. *Radford,* 295 U. S. 555), any statute which substantially modifies vital terms of a contract already in force destroys and impairs the contract obligation and violates the constitutional provision. That is what the Constitution seeks to prevent, and the courts, including the Supreme Court of the United States, have always opposed such State action. (*Sturges* v. *Crowninshield,* 4 Wheat. [U. S.] 122; *Ogden* v. *Saunders,* 12 Wheat. [U. S.] 212; *Bronson* v. *Kinzie et al.,* 1 How. [U. S.] 310; *Louisiana* v. *Mayor of New Orleans,* 109 U. S. 285; *Nelson* v. *St. Martin's Parish,* 111 U. S. 716.)

Nothing in *Home Bldg. & L. Assn.* v. *Blaisdell* (290 U. S. 398, *supra*) or in any other case changes this settled principle. The language which the Attorney-General points to in support of his position must be read against the facts of the particular case. In the *Blaisdell* case (290 U. S. 398, 445, *supra*) for instance, there was no attempt to impair substantial rights or obligations and the court itself expressly wrote that the "integrity of the mortgage indebtedness is not impaired". And the following language must be read with the situation presented in mind (p. 439): "Undoubtedly, whatever is reserved of state power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, nor is the limitation to be construed to destroy the reserved power in its essential aspects. They must be construed in harmony with each other. This principle precludes a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them. But it does not follow that conditions may not arise in which a temporary restraint of enforcement may be consistent with the spirit and purpose of the constitutional provision and thus be found to be within the range of the

reserved power of the State to protect the vital interests of the community. It cannot be maintained that the constitutional prohibition should be so construed as to prevent limited and temporary interpositions with respect to the enforcement of contracts if made necessary by a great calamity such as fire, flood, or earthquake."

Following the *Blaisdell* decision (*supra*), the Supreme Court was called upon to treat other legislation which involved the prohibition against impairing contract obligations. In none of them did the court uphold a statute anything like the one now being considered. (*W. B. Worthen Co.* v. *Thomas*, 292 U. S. 426; *Worthen Co.* v. *Kavanaugh*, 295 U. S. 56; *Treigle* v. *Acme Homestead Assn.*, 297 U. S. 189; *Indiana ex rel. Anderson* v. *Brand*, 303 U. S. 95; *Wood* v. *Lovett*, 313 U. S. 362; *Veix* v. *Sixth Ward Assn.*, 310 U. S. 32; *Gelfert* v. *National City Bank*, 313 U. S. 221.) In *W. B. Worthen Co.* v. *Thomas* (292 U. S. 426) an Arkansas statute exempted the proceeds of life insurance policies from attachment or other process. Holding the statute unconstitutional so far as it applied to rights acquired before the statute's enactment, the court said (pp. 431–432): "Such an exemption, applied in the case of debts owing before the exemption was created by the legislature, constitutes an unwarrantable interference with the obligation of contracts in violation of the constitutional provision." After referring to the *Blaisdell* case (*supra*), the court went on (p. 433): "But we also held that this essential reserved power of the State must be construed in harmony with the fair intent of the constitutional limitations, and that this principle precluded a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them." In *Worthen Co.* v. *Kavanaugh* (295 U. S. 56, 60) the court held unconstitutional a statute which diminished rights of creditors: "To know the obligation of a contract we look to the laws in force at its making. ⁂ ⁂ ⁂ In the books there is much talk about distinctions between changes of the substance of the contract and changes of the remedy. * * * The dividing line is at times obscure. There is no need for the purposes of this case to plot it on the legal map. Not even changes of the remedy may be pressed so far as to cut down the security of a mortgage without moderation or reason or in a spirit of oppression. Even when the public welfare is invoked as an excuse, these bounds must be respected. * * * We state the outermost limits only. In stating them we do not exclude the possibility that the bounds are even narrower. The case does not call for definition more precise."

An examination of these and the other cases indicates that there is no hard and fast rule and no invariable yardstick for reaching a decision; the distinction is often " a matter of degree " (*Martin* v. *District of Columbia,* 205 U. S. 135, 139; *Block* v. *Hirsh,* 256 U. S. 135, 156, *supra*). " The unreasonableness of each regulation depends upon the relevant facts " (*Nebbia* v. *New York,* 291 U. S. 502, 525.) The cases dealing with the mortgage moratorium laws are illustrative. They have been sustained when it appeared that they deprived the mortgagees only of a " chance to get more than the amount of their contracts " (*Gelfert* v. *National City Bank,* 313 U. S. 221, 233, 234, 235, *supra*), or when " they were found to preserve substantially the right of the mortgagee to obtain * * * payment of the indebtedness " (*Louisville Bank* v. *Radford,* 295 U. S. 555, 581, *supra; Home Bldg. & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, *supra*). They have been stricken down " when it appeared that this substantive right was substantially abridged " (*Louisville Bank* v. *Radford,* 295 U. S. 555, 581, *supra; Worthen Co.* v. *Kavanaugh,* 295 U. S. 56, *supra*).

Further, the Supreme Court of this State, in construing the 1920 Rent Laws as having only prospective force, stated that a statute which would modify the provisions of a lease already in force would be regarded as unconstitutional (*Paterno Investing Corp.* v. *Katz,* 112 Misc. 242, 247, affd. 193 App. Div. 897, *supra*); " A fundamental principle of our government embodied in our Federal Constitution is that the obligations of contracts lawfully made must be protected and the states are expressly forbidden from passing laws which impair the obligations of contracts. It is true that parties cannot, by contract, obtain a vested right to injure the public or divest the legislature of its power to enact laws for the protection of the public or the advancement of the general welfare, but the sanctity of contractual obligations, lawful in themselves, must be preserved and the legislature cannot give to a party to a contract, binding when made, an option to tender in satisfaction of his contractual obligation an amount smaller than he agreed to pay."

Accordingly, if section 7 of the statute were to be given a retrospective application and were to apply to leases made before it was passed, it would be unconstitutional. Courts, however, will not ascribe to the Legislature an intention which would render its enactment invalid unless such a design clearly appears. The general rule is that legislation is not to be given retrospective effect unless the Legislature has in unmistakable terms so indicated. (*Shielcrawt* v. *Moffet,* 294 N. Y. 180;

*Orinoco Realty Co.* v. *Bandler*, 233 N. Y. 24, 28, affg. 197 App. Div. 693, 696, 697; *Jacobus* v. *Colgate*, 217 N. Y. 235, 240; *Rhodes* v. *Sperry & Hutchinson Co.*, 193 N. Y. 223; *Cox* v. *Hart*, 260 U. S. 427.) In the recent *Schielcrawt* case (*supra*) LEHMAN, Ch. J., writing for the court, stated (pp. 188, 189): " Nevertheless, as this court has said, ' The general rule is that statutes are to be construed as prospective only (27 Halsbury's Laws of England, p. 159). It takes a clear expression of the legislative purpose to justify a retroactive application (citing cases). * * *.' In the recent case of *Hastings* v. *Byllesby & Co.* (*Granberry*) (293 N. Y. 413, 419), the court in considering the scope of a provision in a remedial and procedural statute that the statute should govern ' *so far as practicable* in cases pending when it takes effect,' said: ' the courts will not give retrospective operation to a statute which interferes with antecedent rights in the absence of an unequivocal expression in the statute that the Legislature intended that the statute should have such effect."

There is no clear or unequivocal language that section 7 of the present statute should be given retrospective application and apply to contracts and leases in existence when it was enacted. On the contrary, the indications are that the Legislature intended that the statute should operate not retrospectively, but only prospectively.

First, the provision in the 1920 Rent Laws which corresponds to section 7 of the present statute was construed as prospective only. (*Orinoco Realty Co.* v. *Bandler*, 233 N. Y. 24, 28, affg. 197 App. Div. 693, 696, 697, *supra; Sylvan Mortgage Co.* v. *Stadler*, 113 Misc. 659; *Paterno Investing Co.* v. *Katz*, 112 Misc. 242, affd. 193 App. Div. 897, *supra; 78th Street & Broadway Co.* v. *Rosenbaum*, 111 Misc. 577.) In the *Orinoco Realty Co.* case (233 N. Y. 24, affg. 197 App. Div. 693, *supra*) where the lease, executed only four days before the statute was enacted, was to commence about six months later, the Appellate Division decided that the 1920 Rent Laws were to be given only prospective application and said (p. 696-697): " In affirming *Paterno Investing Corp.* v. *Katz* (*supra*), which held that chapter 136 of the Laws of 1920 does not apply in the case of a lease of premises made before April 1, 1920, when the law became operative, we necessarily approved of the conclusions of the learned Special Term Justice that the Rent Laws had no retrospective application. We find no reason for changing our views in that respect. * * * But we nevertheless cannot give retrospective effect to such legislation unless the Legis-

lature *in unmistakable terms* stated that prior leases made under conditions similar to those existing when the emergency legislation was passed shall come within its provisions.'' (Italics supplied.) And, on appeal, the Court of Appeals expressly wrote that (p. 28): '' We agree with the courts below that it [the 1920 Rent Law statute] is not retroactive.'' The court also observed that (p. 29) '' the legislature might very well hesitate to add to the opposition on constitutional grounds which it could well foresee would be made to the statutes by attempting to make them apply to agreements adopted a short time or a long time before they went into effect.'' The Legislature, of course, was aware of the 1920 Rent Laws, the decisions construing them, and the language found in those cases, and it is only right to assume that if the Legislature had so intended it would have expressed its intention to make the statute retrospective in unequivocal and unmistakable terms.

Second, although the original bill (S. No. 65 p. 2, lines 3–5), in section 1, recited that the conditions enumerated '' having existed on and since the first day of March, nineteen hundred forty-three, it is hereby declared that a public emergency existed on such date'', that recital was left out of the amended measure which became law. The court believes that the omission is important and confirms the view that the Legislature expressly considered whether the provisions should be made retrospective and decided against it.

Third, it is difficult to see how the conditions and the emergency found to exist by the Legislature could be alleviated by having section 7 apply to past leases, and that was the conclusion reached by Judge LEHMAN in *Paterno Investing Corp.* v. *Katz* (112 Misc. 242, 246, affd. 193 App. Div. 897, *supra*). In that case, in holding that the 1920 Rent Laws were to be construed to apply only to leases made after the legislation was enacted, he asserted: '' it does not even appear that the inclusion within the statute of past contracts would tend to relieve the conditions which in the opinion of the Legislature are harmful to the public. It may be that a prohibition placed upon a landlord against entering into contracts *in the future* at more than a reasonable rental might place landlord and tenant upon a more equal footing and thereby tend to fairer contracts between the parties and possibly a reduction of rent on all dwellings to a reasonable figure and might tend to relieve the present unhealthy congestion to at least a small degree by distributing the possible tenants upon a more equable basis among the available apartments but it is somewhat

difficult to see how a law which would permit a tenant to retain his dwelling and interpose as a defense to an action for rent, that his contract was unreasonable or oppressive where the contract was *made before the legislature had declared* that an emergency existed, would in the slightest degree tend to restore freedom of contract for the future or to relieve the present congestion." (Italics supplied.) The court then went on to say that, if the law were to be given retrospective force, its only effect would be to "impair the tenant's obligation under the contract for the tenant's financial benefit but it would apparently have no other effect."

Fourth, section 8 of the present statute, which deals with the suspension of the landlord's possessory remedies after the expiration of a lease, contains specific language stating that that provision should apply to leases already in existence; section 8 provides that the tenant shall continue in possession so long as he pays the rent to which the landlord is entitled under the statute, "regardless of any contract, lease, agreement or obligation *heretofore or hereafter entered into*". (Italics supplied.) If the Legislature intended that section 7 should apply to leases already executed as well as those to be executed, here was apt language at hand. The absence of such explicit phraseology in section 7 demonstrates that the Legislature desired that provision to have only prospective application.

The reason why the Legislature differentiated in this way is clear. A similar distinction had been made by the courts when they construed the 1920 Rent Laws; while the statute was held not to operate upon leases executed before its passage (*Orinoco Realty Co.* v. *Bandler,* 233 N. Y. 24, affg. 197 App. Div. 693, *supra; Paterno Investing Co.* v. *Katz,* 112 Misc. 242, affd. 193 App. Div. 897, *supra; 78th Street & Broadway Co.* v. *Rosenbaum,* 111 Misc. 577), it was held to prevent the dispossess of a tenant after the expiration of the lease, even though it may have been executed before the law went into effect, as long as he paid the reasonable rent provided for by the statute. (*Block* v. *Hirsh,* 256 U. S. 135, *supra; Marcus Brown Co.* v. *Feldman,* 256 U. S. 170; *People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429.)

It follows, therefore, since the Legislature failed to indicate clearly that past leases came within its provisions, that section 7 is to have prospective application only.

The court has already referred to the recent decision by the Appellate Division in *Matter of Cohen* v. *Starke* (269 App. Div.

256, *supra*). That case concerned the effectiveness of a warrant of dispossess issued before the statute was enacted, and involved only the validity of section 8 insofar as it suspended the remedy of the landlord to dispossess a tenant after the lease expired. As the court, per GLENNON, J., said (p. 260): " The section, as originally passed or as amended, does not take away any rights acquired by the final orders. It merely suspends the enforcement of those rights during an emergency period and at the same time assures the landlord a reasonable rental for his property." The Appellate Division was not called upon to consider section 7 of the act or to decide whether that provision has retrospective application. The *Cohen* case (*supra*) has no bearing upon the construction to be given to section 7 of the act. The cases of *Levy Leasing Co.* v. *Siegel* (250 U. S. 242, *supra*) and *Marcus Brown Holding Co.* v. *Feldman* (256 U. S. 170) have no application either. The *Marcus Brown* case (*supra*) was similar to *Matter of Cohen* (*supra*), just discussed, in that it was concerned with the suspension of the landlord's summary remedy and did not concern the construction of a provision similar to section 7. And in the *Levy Leasing Co.* case (*supra*, pp. 248–249), the court expressly stated that the defense interposed by the tenant " was provided for by c. 136 of the Laws of New York in effect when the lease involved was executed." Clearly, the question as to whether the statute was to be given a retrospective construction was not directly presented.

Since section 7 has only prospective application, the defense called into existence by the statute may not be pleaded in cases such as those before the court which involve leases made before its enactment. Inasmuch as the defendants relied solely upon that defense, the court must find for the plaintiffs.

Plaintiffs are entitled to judgments in the amounts demanded in the amended complaints, with interest.