BEACH-GASPER COMPANY, INC., Plaintiff, *v.* MAURICE J. STRAUSS et al., Doing Business as STRAUSS BROTHERS & COMPANY, Defendants.

City Court of the City of New York, Special Term, New York County, September 26, 1945.

*Nathan A. Markowitz* and *M. W. Markowitz* for plaintiff.

*Charles Horowitz* for defendants.

COLEMAN, J. Both sides agree, notwithstanding the form of the pleadings and the demand of the complaint, that the question to be decided is this: What was the annual rent in force in June, 1944, within the meaning of the Business Space Law of 1945; and more precisely, in determining that amount, is a concession of a month's rent, provided for in an earlier

lease between the parties, to be taken into account? In form the action is one by a landlord to recover $1,437.50 as rent for the month of June, 1945. The tenants, defendants, resist payment on the ground that if they pay this amount for June and similar amounts for each of the months in the year covered by the lease (as they have so far been doing) they will be paying more than 15% above the annual rent in force on June 1, 1944. Both sides also agree that if the tenants are correct in their contention the plaintiff should not recover, as it is immaterial whether the annual rent is divided into eleven parts or into twelve, the basic question being the amount of the annual rental.

The defendants had occupied a store in plaintiff's building for about a dozen years under an annual lease which was renewed from year to year. The original lease contained a "concession" clause and a substantially similar clause was included in each renewal agreement. The last renewal agreement to contain such a clause was the one dated September 20, 1943, for the period February 1, 1944, to January 31, 1945, at an annual rental of $15,000. In January, 1945, there was another renewal, this time for three years, at an annual rental of $18,000 and containing no "concession" clause.

The Business Space Law of 1945 (L. 1945, ch. 314)* intervened, and of course the landlord cannot insist on payment of the amount called for in the current lease (cf. *Twentieth Century Associates* v. *Waldman*, 294 N. Y. 571; *Kuperschmid* v. *Globe Brief Case Corp.*, 184 Misc. 1022). It does ask for a rental at the rate of $17,250 per annum, i.e., 15% above $15,000, the annual rental of the previous years, this being what it considers the base for determining the emergency rent. The tenants, on the other hand, assert that notwithstanding the amount fixed in the earlier lease the base annual rental is only $13,750, this being the amount, in fact, paid for the year, having in mind that by way of "concession" one month was rent free.

Obviously, and as a matter of common understanding, a concession of one month rent free reduces *pro tanto* the rental specified in the lease; and the landlord agrees that if the base for determining the emergency rental is the amount "received"

---

* The landlord refers to the second of the Emergency Rent Laws (L. 1945, ch. 314, eff. March 28, 1945) as controlling, and my decision is on the basis of that statute. I believe, as the tenants contend, that the earlier statute (L. 1945, ch. 3, eff. Jan. 24, 1945) is applicable to the premises in question; but in either case the result is the same, as the rental under the earlier lease was the same and there was a similar "concession" clause.

by it during the year, the tenant's contention would be correct. But, it asserts, the statute in section 1 fixes the " rents charged " on June 1, 1944, as the base, and this, the " rent charged " in the lease, is $15,000. Assuming that these words in the section of the statute defining general policy are to be taken as words of precise definition, it seems to me, having in mind the purposes of the statute, to be an act of equivocation to say that " rents charged " means the full annual rental, when, by contract, the landlord agreed to receive something less than that rental. From the standpoint of the Legislature, viewing a problem in the large, and attempting to solve it, the amount which by force of the lease itself, a tenant paid and the landlord received must be the basis of computation for the increased rent.

Nor is the landlord's case improved by the definition of " Emergency rent " in subdivision (c) of section 2 of the statute, the section which seems to me to be the proper point of reference. " Emergency rent " is " The rent reserved or payable under any lease  *  *  *  in force on June first, nineteen hundred forty-four, plus fifteen per centum of such rent ". Here, too, by examining the lease we find that the rent " reserved or payable " is $15,000 minus one month rent free, that is, $13,750.

I have not overlooked the landlord's contention that the " concession " was a conditional gift to the tenant, a remission of rent for one month provided all the terms of the lease were complied with. It argues from this that under certain conditions rent for the month of June, 1944, would have been payable. It seems to me a sufficient answer that it was not paid, and not having been demanded, we must assume all conditions had been complied with and that by June 1st the tenant owed no more rent.

The basic rent therefore is $13,750. The addition of 15% brings the emergency rent to $15,812.50 as the tenants contend. Whether this amount should be paid in eleven installments or in twelve is, as I have said, immaterial, but it is plain that the amount which the landlord asks for June is too much if the rent is to be divided equally throughout the year. The plaintiff's motion for summary judgment therefore is denied.